In re **RANDBRE CORPORATION**, Debtor.

**RANDBRE CORPORATION, for and on Behalf of itself, Voplex Corporation and Illco Toy Co., U.S.A., Inc., Plaintiff,**

v.

**Michael LADNEY, Jr., Defendant.**

**Bankruptcy No. 81 B 12518.
Adv. No. 86–5390A.**

United States Bankruptcy Court,
S.D. New York.

Oct. 24, 1986.

Levin & Weintraub & Crames, New York City, for debtor; Mitchell H. Perkiel, of counsel.

Brooks & Kushman, Southfield, Mich., for Michael Ladney, Jr.; Mark Cantor, of counsel.

BURTON R. LIFLAND, Bankruptcy Judge.

*Background*

On April 15, 1985 Randbre Corporation ("Debtor") moved to expunge a claim filed by Michael Ladney, Jr. ("Ladney"). No response was made to the motion. Thereafter an order was entered on June 6, 1985 expunging the claim. Ladney, reacting to a complaint seeking injunctive relief, now brings this motion for relief from that order, pursuant to Fed.R.Civ.P. 60(b) and Fed.R.Bankr.P. 9024, arguing that he never received notice of the expungment motion.

For the reasons enumerated below, it is found that there is insufficient evidence from which to conclude that Ladney received notice of the motion to expunge his claim. Accordingly the request for relief from the June 6, 1985 order is granted.

*Findings of Fact*

On December 30, 1981, Randbre Corporation ("Debtor") filed a Chapter 11 petition for reorganization pursuant to 11 U.S.C. § 301 of the Bankruptcy Code ("Code") and continued in the management and control of its business as a debtor in possession in accordance with §§ 1107 and 1108 of the Code. As of the filing date the Debtor and its affiliate Illfelder Toy Co., Inc. ("Illco"), which latter entity owned and continues to own all of the issued and outstanding common stock of Debtor, developed, manufactured, distributed and sold assorted polyurethane toy products. On August 26, 1982 Michael Ladney, Jr. ("Ladney"), a principal of Detroit Plastic Molding Co., commenced a patent infringement action in the Eastern District of New York, against Debtor.[1] Ladney sought damages for alleged continuing patent infringements by the Debtor arising from the Debtor's use of certain molds in the manufacture of its toy products. Debtor's counsel responded on September 21, 1982 by providing Ladney's counsel with notice of the Debtor's ongoing Chapter 11 reorganization,[2] and of

---

1. *Michael Ladney, Jr. v. Randbre Corporation,* CV 82–2543.

2. Ladney's counsel mailed a letter to Debtor's counsel requesting receipt of all notices relating to debtor's Bankruptcy proceedings.

the protections afforded the debtor by 11 U.S.C. § 362(a).[3] The District Court stayed and subsequently dismissed Ladney's patent infringement action without prejudice to refiling at the conclusion of the Debtor's bankruptcy case.

During the course of its reorganization, the Debtor entered into an operating agreement with Illco and Voplex Corporation ("Voplex"). Under the agreement which was authorized by this Court on December 21, 1983, Voplex became the exclusive manufacturer of all polyurethene products previously manufactured by or on account of the Debtor. Ladney's counsel received a copy of the agreement as incorporated in Debtor's disclosure statement. In that disclosure statement the Debtor expressly stated its belief that the Ladney action is meritless and that the Debtor anticipated a completely successful defense. Nonetheless that same operating agreement contained a provision whereby the Debtor and Illco agreed to hold Voplex harmless against any patent infringement claim "[i]ncluding but not limited to any claim or claims by Mr. Michael Ladney, Jr....."

This court issued an order establishing October 1, 1984 as the last day for filing all claims against the Debtor. Ladney complied with this order by filing his unliquidated proof of claim on September 28, 1984. He scheduled his claim as "damages yet to be awarded in a law suit," and listed the basis for his claim as "Michael Ladney, Jr. v. Randbre Corporation, CV 82–2543, patent infringement action."

In February, 1985 this Court entered an order confirming the Debtor's plan of reorganization. After entry of the confirmation order, a written notice of it, advising *inter alia* of Debtor's discharge and the accompanying permanent injunction, was served upon Ladney's counsel. Ladney does not dispute receipt of that notice.

On April 15, 1985 the Debtor moved to expunge Ladney's claim. Although Ladney correctly listed his return address as "*6600* East 15 Mile Road, Sterling Heights, Michigan 48077," in his filed proof of claim, his address was incorrectly listed as "*660* E. 15 Mile Rd., Sterling Heights, MI 48077" on the schedule of claimants maintained by the Clerk of the Court. (emphasis added). The incorrect entry on the schedule of claimants was apparently the result of an error in the Clerk's Office. It is to this incorrect address that the notice of the motion objecting to Ladney's claim was sent.[4] Neither Ladney nor his counsel appeared and on June 6, 1985 this court entered an order expunging Ladney's claim.

On November 15, 1985 Ladney, allegedly unaware that his claim had been expunged, recommenced his patent infringement action against Debtor, this time adding Illco and Voplex as co-defendants.

Debtor filed this adversary proceeding pursuant to Fed.R.Bankr. 7001 on April 30, 1986 seeking, *inter alia*, a permanent injunction in accord with this court's confirmation order of February 1985 and §§ 524 and 1141 of the Code, enjoining Ladney from further proceeding with his civil action. Ladney countered by seeking relief from this court's June 6, 1985 order expunging his claim, pursuant to Fed.R.Civ.P. 60 and Fed.R.Bankr.P. 9024. Ladney bases his argument for relief on the ground that he never received notice of the motion to expunge his claim as the notice was incorrectly addressed. Ladney therefore claims he was denied the opportunity to respond to the motion.

The issue therefore is whether Ladney is entitled to relief from the expunging order in light of his allegation that he never received Debtor's notice of a motion objecting to his claim.

For the following reasons, this court finds that there is insufficient evidence

---

**3.** § 362(a) operates to stay the commencement of judicial proceedings against a debtor once that debtor files a petition pursuant to 11 U.S.C. §§ 301, 302 or 303.

**4.** A copy of the notice was mailed directly to the claimant. *See* Fed.R.Bankr.P. 3007 and 2002(g). Nothing required the debtor to use the clerk's entry rather than the address submitted by claimant on his proof of claim.

from which to conclude that Ladney received notice of the motion to expunge his claim.

*Discussion of Law*

Fed.R.Civ.P. 60(b) is applicable to Bankruptcy cases pursuant to Fed.R.Bankr.P. 9024. Rule 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (4) the judgment is void;....

■ A judgment is "void" if the court that rendered it acted in a manner inconsistent with due process of law. *In re Texlon Corp.*, 596 F.2d 1092, 1099 (2d Cir. 1979); 11 Wright & Miller, Federal Practice and Procedure, § 2862 at 198 (1973) (footnotes omitted). As the motion was incorrectly addressed, Ladney asserts he was denied the due process to which he was entitled. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections...." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (citation omitted). That Ladney knew of the bankruptcy case is not controlling since a claimant's knowledge of a reorganization does not deprive that claimant of his right to assume that he will be provided the statutory "reasonable notice" before his claim is expunged. *See New York v. N.Y., N.H. & H.R. Co.*, 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953) (a creditor's knowledge that a reorganization of the debtor is taking place does not substitute for mailing notice of a bar date).

■ Before a claimant can have his claim expunged the Bankruptcy Rules mandate that the claimant receive a copy of the objection to his claim, along with notice of the hearing thereon, at least 30 days prior to the hearing. Fed.R.Bankr.P. 3007. Such notice shall be mailed or otherwise delivered to the claimant. *Id.* Mail properly (1) addressed (2) stamped and (3) deposited in the mail system is presumed to have been received by the party to whom it was addressed. *Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 418, 76 L.Ed. 861 (1932) (citation omitted); *Bratton v. The Yoder Co. (In re The Yoder Co.),* 758 F.2d 1114, 1118 (6th Cir.) *reh. and reh. en banc denied* (1985); *In re Torres,* 15 B.R. 794, 797 (Bankr.E.D.N.Y.1981).

In the instant action, while there is no issue as to whether the notice of motion was properly stamped and deposited in the mail system, the Debtor concedes that it was incorrectly addressed to Ladney. The notice was addressed to *660* E. 15 Mile Rd. rather than Ladney's correct address which is *6600* E. 15 Mile Rd. the Debtor having used the incorrect address from the claims register maintained by the Clerk's Office.

■ Where an incorrect address is used the presumption of receipt does not arise. *Optivision, Inc. v. Syracuse Shopping Center Assoc.,* 472 F.Supp. 665, 693 (N.D.N.Y.1979) *citing Nassau Insurance Co. v. Murray,* 46 N.Y.2d 828, 414 N.Y.S.2d 117, 386 N.E.2d 1085 (1978). In *Optivision* the letter at issue was addressed:

> Mr. Irving Rosenberg
> Syracuse Shopping Center Associates
> Northern Lights Shopping Center
> North Syracuse, New York 13202

The court noted:

> While the management of Northern Lights regularly receives mail at its offices in the shopping center, such mail is addressed to International Business & Realty Corporation or simply to Northern Lights Shopping Center rather than to Syracuse Shopping Center Associates [located in Buffalo].... Also, the proper zip code for the Northern Lights Mall was not used in the above address, and ... [it was] acknowledged that it was quite possible that there was no return address on the envelope. Of course there is no presumption that an incorrectly addressed letter was duly received.

*Id.*

Debtor nonetheless seeks to distinguish the instant action by highlighting the "inconse-

quential" difference between the two addresses involved herein.

Where an address is slightly incorrect, courts have recognized a weakened presumption of receipt, if there is sufficient evidence from which to presume that the addressee nonetheless received the incorrectly addressed notice. *In re American Properties, Inc.*, 30 B.R. 239, 244 (Bankr.D. Kan.1983) (citations omitted).[5] There is insufficient evidence presented in the instant case to warrant a weakened presumption.

■■■ In an attempt to support such a weakened presumption, Debtor's counsel submitted an affidavit in which he relates a conversation he had with the Assistant Postmaster for Sterling Heights, Michigan. According to this affidavit, the Assistant Postmaster told Debtor's counsel that a parcel addressed to Ladney at *660* E. 15 Mile Rd. "would be delivered" to and received by Ladney at its offices at *6600* East 15 Mile Rd. We find this statement to be hearsay, but assuming arguendo that it is admissible, it is not persuasive. The tenacity of the postal service in delivering imperfectly addressed mail cannot be credibly established through Debtor's counsel. Indeed such tenacity, which may be exhibited in specific instances (postal cynics notwithstanding), is improbable as a general proposition.[6]

Accordingly, this court draws no presumptions from affidavits submitted by Debtor's attorney as to conversations had with Post Office administrators speculating on the receipt of the notice at issue.

Debtor cites *In re Torres* to support its contention that Ladney should be presumed to have received adequate notice in spite of the incorrect address. 15 B.R. 794. In *Torres*, a claimant contended that he was not served with timely notice of the fact that debtor had commenced a bankruptcy case, and therefore was deprived of his right to object to the debtor's plan prior to confirmation. *Id.* at 795. The notice at issue was addressed to *900* Hempstead Turnpike instead of *1900* Hempstead Turnpike. In *Torres* however claimant conceded that he ultimately did receive notice of debtor's filing of a bankruptcy petition

---

**5.** Citing *Barnet v. Norton,* 90 Vt. 544, 99 A. 238 (1916) ("Some question is made as to the sufficiency of the address on the envelope in which this notice was sent, but we think it was sufficient to raise a presumption of its receipt in due course. It was directed to the overseer of the poor of the town of Norton.... Modern mail service has attained that degree of efficiency and certainty that such an address is almost, if not quite, as sure to reach its proper destination as if addressed with an individual's name). *American Surety Co. of New York v. Blake,* 54 Idaho 1, 27 P.2d 972 (1934) (A jury could reasonably conclude that a letter addressed to "American Surety Company, Salt Lake City, Utah" was properly addressed where the addressee's correct address is "American Surety Company of New York, Boston Building, Salt Lake City, Utah" because "[i]t is a matter of common knowledge that the American Surety Company of New York is commonly known by and spoken of as, the American Surety Co.").

**6.** Debtor also submitted an affidavit alleging that on July 23, 1986 it mailed two letters to the "incorrect address," one via regular mail and one certified mail return receipt requested. The certified letter was received by an agent of Ladney at Ladney's place of business, despite the incorrect address. The Debtor alleges that the other letter, just like the original letter at issue, was not returned to sender as undeliverable, and in accord with *In re Torres* should be presumed to have been duly received by Ladney. *See* 15 B.R. at 797. In light of the authorities cited above and the evidence presented, these assertions provide an insufficient basis for this court to conclude that Ladney received the notice at issue. However, had this evidence been introduced in conjunction with a direct sworn statement from the Assistant Postmaster in question, the facts of the instant case might have warranted invoking the presumption of receipt. To the extent that *E.E.O.C. v. T. Marzetti Co.* holds otherwise, it is not persuasive. 411 F.Supp. 1036, 1037 (S.D.Ohio 1976). The *Marzetti* court, presented with a lesser amount of presumption evidence, refused to draw any inference from the fact that the incorrectly addressed letter was not returned to sender as undeliverable. *Id.* The fact that a letter containing a proper return address is not returned to its sender, although not dispositive, is a relevant factor in determining whether to invoke the presumption of receipt. *Torres,* 15 B.R. at 797 citing *In re Roslyn Gardens,* Bankr.L.Rep. (CCH) ¶ 59,115 (E.D.Pa.1957). *Wyser v. Estrin,* 129 N.Y.S.2d 487 (Kings Co.1954), *appeal dismissed,* 285 A.D. 827, 136 N.Y.S.2d 744 (2nd Dept.1955).

prior to confirmation of debtor's plan.[7] That argument would not be compelling here since Ladney's knowledge of the reorganization would not deprive him of his right to assume that he would receive reasonable notice prior to having his claim expunged. *See N.Y., N.H. & H.R. Co.*, 344 U.S. at 297, 73 S.Ct. at 301. In light of the authorities cited and the evidence presented this court cannot conclude that Ladney received the notice at issue.

■ Debtor contends that even assuming Ladney did not receive notice of the motion objecting to his claim, he is nonetheless equitably estopped from recovering on that claim.

The doctrine of equitable estoppel consists of the following four elements:

(1) The party to be estopped must know the facts;

(2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;

(3) the latter must be ignorant of the true facts, and

(4) he must rely on the former's conduct to his injury.

*Rosenthal v. National Life Ins. Co.*, 486 F.Supp. 1018, 1023 (S.D.N.Y.1980) (citations omitted).

As to element (1), Ladney can be presumed to have known of Debtor's intent to continue the alleged patent infringing activity pursuant to an operating agreement with Illco and Voplex. This knowledge is inferred from admissions by Ladney's counsel of receipt of notices containing the terms of the operating agreement. However, with respect to element (2), Article X of the operating agreement states:

Illfelder and Randbre agree to indemnify and hold Voplex harmless from and against any and all liabilities, damages and out of pocket costs and expenses, including but not limited to counsel fees and direct and indirect expenses, arising

out of or relating to any claim or claims of patent infringement that the use of the Molds and any product arising from the use therefrom infringe upon any patent or patents issued to any third party, *including but not limited to any claim or claims by Michael Ladney, Jr. respecting U.S. Patents No. 3,871,060 and reissued U.S. Letters Patent no. 28, 826.* (emphasis added).

In its disclosure statement Debtor noted its belief that Ladney's claim is meritless. Nonetheless, adjacent thereto the disclosure statement reprinted the above cited indemnification agreement. In light of this explicit agreement by Debtor to act as indemnifier, Ladney had no reason to conclude that the filed claim itself was no longer viable.

As to element (3), Debtor contends that as a result of Ladney's failure to come forward with regard to the claim, Randbre was totally unaware that Ladney would "belatedly resurrect its allegations of patent infringement." This argument is unconvincing.

"While the burden of ultimate persuasion is always on the claimant, and while probative force is given to the allegations in that creditor's proof of claim, the trustee nonetheless carries the burden of going forward to meet, overcome, or at least equalize, what operates in favor of the creditor by the force of section 502(a) and the Rule [ (3001(f)) ]." 3 L. King, Collier on Bankruptcy ¶ 502.01 at 502–17 (15th ed 1986) Debtor's statement in its disclosure statement that it "believes that the Ladney action ... is wholly without merit and the Debtor is confident of a completely successful defense" was insufficient to "equalize" the presumption of propriety afforded Ladney's claim under § 502(a), in light of Debtor's agreement to act as indemnifier in the event that Ladney did prevail in his patent infringement action.

As to element (4), to the extent that Debtor did rely on Ladney's "failure to

**7.** "Petitioner [ (claimant) ] by its own admission had actual knowledge of the bankruptcy proceedings well in advance of the date set for

confirmation hearing on debtor's plan." *Id.* at 797.

come forward," Ladney cannot be held responsible for Debtor's unjustified reliance.[8]

Accordingly, the June 6, 1985 order expunging the claim is hereby vacated and set aside.

It is SO ORDERED.[9]

---

8. The Debtor articulates similar arguments in an attempt to establish that Ladney waived his right to enforce the claim, and that Ladney's claim is barred by Laches. These arguments are similarly unconvincing in light of the above cited facts.

9. In view of the ruling herein and the recommenced patent infringement suit, the complaint for a permanent injunction is clearly vulnerable to a motion to dismiss.