# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 93-CT-01266-SCT

*ROBERT E. THAMES*

*v.*

*SMITH INSURANCE AGENCY, INC.*

### CONSOLIDATED WITH

### 93-CT-01267-SCT

*ROBERT THAMES d/b/a MALTA MART*

*v.*

*SMITH INSURANCE AGENCY, INC.*

### CONSOLIDATED WITH

### 93-CT-01268-SCT

*SEAVIEW RESORTS, INC.*

*v.*

*SMITH INSURANCE AGENCY, INC.*

### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/02/93 |
| TRIAL JUDGE: | HON. KEITH STARRETT |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT ALAN BYRD |
| ATTORNEYS FOR APPELLEE: | JERRALD L. NATIONS |
| | MICHAEL MADISON TAYLOR |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 5/14/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/4/98 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. This dispute involves the question of whether the trial court erred in failing to grant either a continuance or a new trial based on a claim of lack of notice where the written notice was mailed to an address correct in all respects except the last digit of the zip code. An equally divided court of appeals affirmed. The majority reasoned that a "slightly incorrect" address gave rise to a "weakened presumption" of delivery sufficient to sustain the finding of the trial court. The dissenters disagreed and suggested that the absence of the presumption together with the failure of the clerk to mail notice of the docket setting in strict compliance with Miss. R. Civ. P. 40 compelled reversal. We granted certiorari to resolve the issue as it involves an area of interpretation of our rules of civil procedure not previously addressed by this Court.

**I.**

¶2. This appeal originated in three complaints filed in the Circuit Court of Lincoln County by Smith Insurance Agency, Inc., seeking recovery on open accounts for insurance premiums against Robert E. Thames, Robert E. Thames d/b/a Malta Mart, and Seaview Resorts, Inc., a corporation controlled by Thames (collectively referred to as "Thames"). Answers by way of a general denial were filed, and ultimately judgments were rendered against Thames, without participation by them in the trial of the case, but urging that they did not have sufficient notice of the trial setting. Thereafter the defendants filed a motion for a new trial, which the judge denied. These appeals, now consolidated, are from the order denying a new trial.

¶3. The complaints against Robert E. Thames d/b/a Malta Mart and Robert E. Thames were filed on September 13, 1991; Smith filed a similar complaint against Seaview Resorts on January 7, 1992. Both sides engaged in discovery with no apparent problems in communication. Only as the cases approached trial did Thames' attorney begin to complain of difficulty in his communications with opposing counsel and with the court.

¶4. On September 23, 1992, Smith filed a motion for pre-trial conference in all three cases. On March 18, 1993, the Clerk for the Circuit Court of Lincoln County sent notice of the setting of the trial docket to Thames' counsel, Byrd & Wiser; however, the zip code in the address of the notice was incorrect in that it was stated as "39538" rather than "39533," the correct code. "39538" is a non-existent zip code.

¶5. Kenneth Johnston, an associate for Byrd & Wiser responsible for the Thames cases, maintains that he did not receive the notice. He acknowledges that he had tentatively agreed to a pre-trial conference on April 12, 1993. He asserts that on April 9, while out of the office, he instructed his secretary to call opposing counsel and try to reschedule the conference, due to his upcoming wedding in Dallas on April 17, 1993. Opposing counsel denied receiving the call. Without confirmation of any contact by the secretary, Johnston, rather than attend the pre-trial conference, elected to call opposing counsel on April 12, 1993.

¶6. He learned that counsel opposite was at that moment in McComb attending the conference with

Judge Starrett. Johnston then phoned Judge Starrett and requested rescheduling. This request was denied, but Johnston was allowed to participate telephonically. He argued that the case was not ripe for trial due to incomplete discovery. The judge rejected his argument and directed him to fax a pretrial order. Judge Starrett also advised him of the docket call scheduled for the next day and that the trial would be set for the May term of court.

¶7. Johnston likewise chose not to attend the docket call. He later asserted that he did not have the requisite notice of docket call and that he had conflicts in bankruptcy court. No proposed pretrial order was faxed to Judge Starrett by Johnston. A pretrial order, without Johnston's endorsement, was signed on April 13, 1993. In spite of being told by the judge that discovery was concluded, the docket was to be set, and the matter was going to trial, Johnston apparently did nothing further to inform himself of the status of his cases.

¶8. On April 20, 1993, the clerk, using the defective zip code for Byrd & Wiser, mailed out the trial docket showing that the cases were set for jury trial on May 25, 1993. The deputy clerk testified at a hearing that at the request of counsel for Smith she mailed an additional copy of the docket sheet to the same address on or about April 26. Johnston says that this too failed to arrive at his office and that he was unaware of the trial setting until Judge Starrett called him on May 24.

¶9. Johnston then filed a motion for a continuance, asserting that he did not receive the required notice of docket call or of the trial setting pursuant to the rule. The motion was heard on the morning of trial. Johnston testified and provided the affidavit of the firm's office manager, which also said that no information about docket call or trial settings had been received from the Lincoln County Circuit Clerk's office. Jerrald Nations, counsel for Smith, also testified.

¶10. Nolon Bowman, a superintendent of postal operations at the Brookhaven post office, was also called to testify at the hearing on the motion for continuance. Mr. Bowman testified as to practices and procedures in the postal system. He stated that when a piece of mail bears a non-existent zip code, as here, it is kicked out of the automatic sorting system and handled by a person who looks to the city and state, forwarding it accordingly. He further explained that the first three digits of the zip code identifies the section center and would result in the mail being delivered to that area where it would, in the face of a non-existent code designated by the last two digits, be handled by hand and delivered, albeit not in "a day or two." Although Mr. Bowman's opinion was based on his employment experience in the Brookhaven post office, he stated that standard post office procedure provides for at least one clerk in each office to handle improperly addressed mail. While he could not testify as to his personal knowledge that the Gulfport office handled all of its improperly addressed mail on the same day that it came in, he declared that in "our size office, we do all of ours the same day." Mr. Bowman characterized the Gulfport and Brookhaven offices as among the "bigger offices" in Mississippi.

¶11. Karen Maxwell, deputy circuit clerk for Lincoln County, also testified for Smith at the hearing on the motion for continuance. Ms. Maxwell stated that she dealt with the docket call notices and if mail had been returned it would have been given to her. She testified that the notices, all of which had been mailed to Byrd & Wiser no less than twenty-nine days earlier, had not yet been returned as undelivered.[1]

¶12. Judge Starrett found as a matter of fact that Johnston was aware of the pre-trial conference, and

that the court had followed the rules in setting the trial date and getting notice out. He then denied the motion for continuance. Johnston, on behalf of his client, who was not present, declined to participate in the trial. He cited his unpreparedness due to the lack of proper notice. Smith then presented its case to the jury, which returned verdicts in favor of Smith in all three cases. At the time of trial, the original collection action had been pending for almost a year and a half, and Thames had received voluminous discovery from Smith. We also note that the trial took place over a month after Johnston's wedding. On September 7, 1993, the court heard Thames' motion for new trial which again stated that neither Thames nor counsel for Thames received the required advance notice of the trial setting. This motion was also denied. The trial court concluded: "I further find, as a finding of fact, that notwithstanding the wrong zip code being on the mail to the attorneys, that it was properly mailed and that they did receive it--both the notice of the docket setting and of the trial setting."

¶13. The Court of Appeals, in affirming the decision of the trial court, found that the one- digit error in the zip code was not sufficient to defeat the presumption of delivery, even though the presumption may have been weakened. In addition, the Court of Appeals found that the technical violation of the three-day requirement of Miss. R. Civ. P. 40(b) for mailing docket notices did not serve to void the notice as there was no showing of prejudice. The petition for rehearing was denied. Thames thereafter filed a petition for certiorari in this Court.

## II.

¶14. Thames argues that the Court of Appeals erred in affirming the trial court's denial of Thames' motion for a new trial. The burden borne by Thames is a heavy one. "'[T]he grant or denial of a new trial has always been within the sound discretion of the trial judge, and absent an abuse of discretion, this Court is 'without power to disturb such a determination.'"" *Misso v. Oliver*, 666 So. 2d 1366, 1376 (Miss. 1996) (quoting *American Fire Protection v. Lewis*, 653 So. 2d 1387, 1390 (Miss. 1995) and *Muse v. Hutchins*, 559 So. 2d 1031, 1034 (Miss. 1990)). The trier of facts, whether judge or jury, on any issue is entitled to rely on the credible evidence presented and upon all warrantable inferences emanating from those facts. *See, e.g., Anderson v. Anderson*, 692 So. 2d 65, 71-72 (Miss. 1997); *Junior Food Stores, Inc. v. Rice*, 671 So. 2d 67, 76 (Miss. 1996); *Yarbrough v. Camphor*, 645 So. 2d 867, 869 (Miss. 1994) (we will accept the findings of fact made by trial judge without a jury when supported by the facts and reasonable inferences); *Strong v. State,* 600 So. 2d 199, 204 (Miss. 1992) (we will reverse the trial court for failing to grant a new trial following a jury verdict only when convinced that the trial court abused its discretion).

¶15. The present case turns simply upon whether there is substantial evidence to support the trial court's finding that the notices were properly mailed and delivered. We conclude that in both the hearings on the continuance and the motion for a new trial, the court had before it evidence substantially supporting its conclusion that in fact they were.

¶16. There is a presumption that mail deposited, postage prepaid and properly addressed is timely delivered to the person addressed. *Hagner v. United States*, 285 U.S. 427, 430 (1932); *Threatt v. Threatt*, 212 Miss. 555, 559, 54 So. 2d 907, 908-09 (1951). On the other hand, the present case involves mail which--however slight the error may be--is incorrectly addressed. Because of that fact, the presumption of delivery simply does not arise. We reject the concept of a "weakened presumption." *See, e. g., In re Longardner & Assoc., Inc*., 855 F. 2d 455, 460 (7th Cir. 1988); *In re*

*Pettibone Corp.,* 123 B. R. 304 , 310 (Bankr. N. D. Ill. 1990). Such a presumption is thought necessary in these circumstances lest the work of the court be unduly hampered by false and irrefutable claims of non-delivery. Shifting the burden of proof to a party to prove the negative, however, is a serious matter. Mail delivery, even where properly addressed, is problematic in some instances. We have no evidence that affords us confidence in the regularity and timeliness of delivery in cases where the address is "slightly" imperfect. It takes evidence to establish the "tenacity of the postal service in delivering imperfectly addressed mail. . . . Indeed such tenacity, which may be exhibited in specific instances (postal cynics notwithstanding), is improbable as a general proposition." *Randbre Corp. v. Ladney*, 66 B. R. 482, 486 (Bankr. S. D. N. Y. 1986).

¶17. Our rejection of the concept of a weakened presumption does not compel reversal, however, because the trial court had no need to and did not rely on the presumption. The trial court found from the evidence presented that the firm received the notices. While we do not recognize that a burden-shifting presumption arises out of a slightly imperfect address, we will allow an inference to be derived from such a mailing unless it appears that the address is so imperfect as to make delivery improbable. That inference together with other evidence may support a finding of delivery.

¶18. At the hearing on the motion for continuance, the trial court inferred proper and timely delivery from the nature of the deficiency in the address, the evidence of the postal superintendent as to general post office procedures for handling such a deficiency, and the fact that the mail was not returned to the sender. While this is a close case, we conclude that Smith carried its burden of proving proper delivery. Thus, the trial court's decision was adequately supported by this evidence. *See* *Randbre Corp.,* 66 B.R. at 486 n.6.

¶19. The hearing on Thames' motion for new trial was conducted on September 7, 1993. There is no indication that by the time of this hearing the critical notices had been returned to the sender. Thames offered no other evidence to suggest a change in the evidence upon which the trial court had based its denial of the continuance. Since the trial court's denial of the continuance was adequately supported by the evidence, the court did not abuse its discretion in denying the motion for a new trial based upon the same evidence.[(2)]

### III.

¶20. In the petition for certiorari we are asked to find that failure to strictly comply with the requirements of Miss. R. Civ. P. 40(b) mandates a new trial. This argument is premised on the assumption that there was no timely delivery of the notices--a circumstance belied by the court's findings. The dissent in the Court of Appeals focuses on the asserted failure of the clerk to mail the notice of the setting within three days following the setting of the trial docket. On review, the record of the hearings on the motion for a continuance and that for a new trial do not disclose any objection by Thames to the lag between the calling of the docket and the mailing of the notice of trial. Thames argued only that they were prejudiced by failing to receive the Rule 40(b) notice of the setting of the docket and of the trial itself. The argument as to a violation of the three-day limit for mailing the notice of trial was raised for the first time on appeal. It follows that this argument is procedurally barred.

¶21. In any event, the defendant's claim is without merit. Rule 40(b) requires that cases be set on the trial docket "at least twenty (20) days before the date set for trial," in the absence of agreement

between the parties. The rule also requires that the clerk "within three (3) days after a case has been placed on the trial docket notify all parties who were not present personally or by their attorney of record at the docket setting as to their trial setting." Miss. R. Civ. P. 40(b).

¶22. While the docket was called on April 13, 1993, the trial docket was, as stated in Thames's brief, delivered to the clerk by the court administrator on April 20, the day on which the notice of trial was mailed to Byrd & Wiser. This is well over twenty days prior to the date of the trial. Where the parties are notified of the pending trial well in advance, we are not prepared to hold that a minor deviation by the clerk from the three-day rule is sufficient to vitiate the trial setting without a showing of actual prejudice occasioned by the deviation. No such prejudice is shown here. Assuming delivery, there is simply no significant difference between mailing on the third as opposed to the seventh day following docket call where either day is calculated to give in excess of twenty days notice of the trial setting. The adoption of the rules did not alter the traditional duty of an attorney to attend to matters pending before the courts and to keep himself informed of their status.

¶23. **THE DECISION OF THE COURT OF APPEALS AND THE JUDGMENT OF THE TRIAL COURT ARE AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY. WALLER, J., NOT PARTICIPATING.**

1. The docket call notice was sent on March 18, sixty-eight days before the hearing; the first trial docket notice was sent on April 20, thirty-five days before the hearing; and the additional trial docket notice was sent on April 26, twenty-nine days before the hearing.

2. There was testimony from the circuit court clerk that she sent out two items by certified mail after the trial, one with the correct zip code and one with the same erroneous address that the notices had contained. Return receipts verified that both items were properly delivered, and Smith argues that this fact constitutes additional evidence that the original notices were properly delivered. Smith did not demonstrate, however, that certified mail is handled in the same manner as regular mail. Accordingly, we assign little importance to this evidence.