**In re 401 EAST 89TH STREET OWNERS, INC., Debtor.**

**Bankruptcy No. 96 B 40187(TLB).**

United States Bankruptcy Court, S.D. New York.

July 20, 1998.

---

Cooper & Cooper, LLP, New Rochelle, New York, By Joseph R. Harbeson, for Permanent Mission of Nigeria to the United Nations.

Pollack & Sharan, LLP, New York City, By Adam Paul Pollack, for SBE 89, LLC.

## DECISION EXCUSING THE MISSION'S FAILURE TO EXERCISE ITS RIGHTS OF REDEMPTION

TINA L. BROZMAN, Chief Judge.

Through the vehicle of a proposed modification under Fed.R.Civ.P. 60(b) of the order confirming the debtor's reorganization plan, the Permanent Mission of Nigeria to the United Nations (the "Mission") moves to be excused from failing to redeem its shares in the debtor cooperative corporation, which failure, pursuant to the debtor's plan, has led to the forfeiture of the Mission's shares and termination of both its proprietary leases. The debtor has taken no position with respect to the requested relief; opposition

comes solely from the entity obligated under the plan to purchase the forfeited shares.

## I.

401 East 89th Street Owners, Inc. (the "Debtor"), is a cooperative corporation that owns a 198 unit residential apartment building (the "Building"). In 1988, the Mission purchased shares in the Debtor for $440,000 and entered into proprietary leases for apartments #3A and #12C. The Mission's principal place of business is not on 89th Street but at 825 Second Avenue, New York, New York. The two apartments are used for residential purposes by administrative attachés.

The Debtor filed its chapter 11 petition in early 1996 and, as is often the case, did not file the requisite schedules and lists of creditors with the petition but instead obtained a court-ordered extension of time within which to do so. To receive the extension of time, the Debtor was required to supply the clerk of the court with a matrix of the creditors and their addresses. About a month later, the clerk mailed to the creditors and other interested parties on the matrix a "Notice of Commencement of Case Under Chapter 11 of the Bankruptcy Code." Attached to that notice was a "Certificate of Service," bearing the same date, on which neither the name nor the address of the Mission appeared. The following month the Debtor filed with the court a "Summary of Schedules" which did not contain a list of equity security holders but did include a "Schedule G" of parties to executory contracts and unexpired leases. The Mission was included in this schedule under the heading "Other Units Owned," listing those apartments not owned by the Debtor or Memorial Sloan Kettering Hospital. The mailing address for the Mission was identified by the Debtor as 401 East 89th Street, Apts. #3A and #12C, New York, New York, 10128.

With the filing of the schedules, the Debtor was postured to determine the claims against its estate. To that end, in April 1996, I signed an order establishing the final date to file proofs of claims (the "Bar Order"). The Bar Order required the Debtor to serve notice of the last date to file proofs of claim (the "Bar Date Notice") on "all entities that are listed in any one or more of the Debtor's schedules of liabilities as holding claims against, or executory contracts or unexpired leases with the Debtor." Despite this directive, the affidavit of service of the Bar Date Notice reveals that, as with the Notice of Commencement of Case, the Mission was not served.

The same oversight was not perpetuated when it came time to confirm a plan of reorganization. The affidavits of service relating to the disclosure statement and second amended plan of reorganization (the "Plan"), including notice of the hearing and the time within which to file objections, reflect that the Mission was served by first class mail at 401 East 89th Street on April 3 and May 2, 1997. On June 5, 1997, I confirmed the Plan, section 11 of which provides that each shareholder is required to pay an assessment fee calculated in accordance with the number of shares held. The assessment fees served as a funding mechanism for the Plan—the Debtor's shareholders would contribute to the Plan in exchange for retaining their equity interests and proprietary leases to their apartments. The Plan further provided that shareholders were to be notified of this requirement by service of an assessment notice by regular first-class mail (the "Notice of Assessment"). This mechanism was discussed in the disclosure statement, which explained that time was of the essence and that failure to pay the assessment fee would result in automatic termination of the shareholder's interest in the Debtor as of the effective date of the Plan (a date several weeks after confirmation), with any occupants considered tenants at will and subject to eviction through summary proceedings. On June 12, 1997, the Debtor served the Mission with the order confirming the Plan (the "Confirmation Order") as well as a related order not germane to this dispute.

The affidavit of service of the Notice of Assessment indicates that the Debtor served the Mission, again at 401 East 89th Street, by first-class mail, the manner called for under the Plan, on June 6, 1997, just about a week before the Confirmation order was served. However, that affidavit was dated August 19, 1997, some two months after the

notice was allegedly served, and was sworn to the following day, August 20, 1997. The Notice of Assessment advised that, because time was of the essence, the assessment amount had to be received by 5:00 p.m. on June 26, 1997, failing which the shares of stock would be canceled and the Debtor would issue new shares of common stock to SBE, 89 LLC ("SBE")(the designee of Credit Suisse First Boston Mortgage Capital LLC) which would be obligated to purchase the stock of the defaulting shareholder.

When the Mission failed to pay the assessment, the forfeiture occurred. The Mission's shares were canceled and new shares were issued to SBE, as required by the Plan. On August 20, 1997, SBE served at both of the Mission's two residential units a five-day "Notice of Termination" purporting to cancel the Mission's proprietary leases effective August 29, 1997. The notices were left with children and sent to the Mission at the apartments by certified mail, return receipt requested. *See Exhibit D to Moving Affidavit.* Upon receipt of those notices, the Mission advised SBE that the Mission had never received the Notice of Assessment and that it was willing to pay the assessments (which the Debtor had calculated to be approximately $90,000) to SBE if it would agree to acknowledge the Mission's ownership of the apartments. SBE refused.

Several days later, SBE commenced two state court summary holdover proceedings. The Mission answered and removed the actions to the District Court, which has placed them on its suspense calendar pending my decision on this motion.

## II.

The Mission contends that not only did it fail to receive the Notice of Assessment, but it did not receive any notices relating to the Debtor's bankruptcy proceedings prior to receiving from SBE the Notice of Termination, to which a copy of the Notice of Assessment was attached. The Mission argues that it was entitled to and should have received notice of the assessments required to maintain its equity in accordance with the Foreign Sovereign Immunities Act ("FSIA"), or at least in accordance with the provisions of the proprietary leases, which require any notices pertaining to the premises to be served at the Building by registered or certified mail, return receipt requested. Because the service did not meet either the statutory or contractual conditions, the Mission maintains, it is entitled to relief under Fed.R.Civ.P. 60(b) on the grounds of excusable neglect or extraordinary circumstances. Urging that the termination of its proprietary leases and the cancellation of its shares ought be deemed ineffective, the Mission argues that it did not default under the Confirmation Order. Rather, it says, its failure to respond to the Notice of Assessment was inadvertent and excusable due to its lack of notice. The Mission asks to be relieved from so much of the Confirmation Order as terminates its proprietary rights and to be permitted to cure its delinquency in paying the assessment fees. Alternatively, the Mission argues that this court lacks the personal jurisdiction required to deprive the Mission of its property rights in the Debtor because of the failure of the Debtor to serve it in accordance with the FSIA.

SBE counters that nothing in the Bankruptcy Code or Federal Rules of Bankruptcy Procedure requires the Mission, as a foreign entity, to receive specialized notice of a type different from that received by the other equity interest holders. SBE claims that, with jurisdiction over the Debtor, I was empowered to regulate the transmittal of notices to all entities affected by the Debtor's Plan. It argues that the notice prescribed by the Plan was reasonably calculated to apprise all apartment owners of the assessment fee requirement and the consequences of the failure to pay it. SBE further maintains that the FSIA is inapplicable because none of the notices served in this bankruptcy case can be considered "initiatory papers" by which this court was attempting to exercise personal jurisdiction over the Mission.

Finding that on the basis of excusable neglect the Mission should be relieved from the forfeiture caused by entry of the Confirmation Order, I do not consider either the implications of the FSIA or whether service of the notices was deficient and therefore ineffective under the proprietary leases.

### III.

The confirmation of a plan of reorganization has the equivalent effect of a judgment by the court, binding both the debtor and its creditors. *See In re Laing,* 31 F.3d 1050, 1051 (10th Cir.1994); *In re Chattanooga Wholesale Antiques, Inc.,* 930 F.2d 458, 463 (6th Cir.1991); *Republic Supply Co. v. Shoaf,* 815 F.2d 1046, 1053 (5th Cir.1987); *In re Emergency Beacon Corp.,* 48 B.R. 356, 359 (S.D.N.Y.1985)(Act case); *In re Boroff,* 189 B.R. 53, 56 (D.Vt.1995); *DiBerto v. Meadows at Madbury, Inc.,* 171 B.R. 461, 471 (Bankr. D.N.H.1994); *In re Burton Securities S.A.,* 202 B.R. 411, 418 (S.D.Tex.1996). *Res judicata* principles apply to confirmed plans to bar the re-litigation of issues that were or could have been raised in the confirmation proceedings. *See Sure–Snap Corp. v. State Street Bank and Trust Co.,* 948 F.2d 869, 873 (2d Cir.1991); *Laing,* 31 F.3d at 1051; *Eubanks v. FDIC,* 977 F.2d 166, 170 (5th Cir. 1992); *American Surety Co. v. Coral Gables First Nat'l Bank (In re Constructors of Florida, Inc.),* 349 F.2d 595, 601 (5th Cir.1965), *cert. denied,* 383 U.S. 912, 86 S.Ct. 886, 15 L.Ed.2d 667 (1966); *Burton Securities,* 202 B.R. at 418. This rule provides finality to a confirmed plan. *See Burton Securities,* 202 B.R. at 418; *Chattanooga,* 930 F.2d at 463; *In re Blanton Smith Corp.,* 81 B.R. 440, 442–443 (M.D.Tenn.1987).

Notwithstanding the finality of an order of confirmation, it may be affected by relief granted under Fed.R.Civ.P. 60(b), for Fed. R. Bankr.P. 9024 makes Rule 60 applicable to bankruptcy cases. Fed.R.Civ.P. 60(b) provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; .... The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Having moved for the relief it seeks slightly more than three months after the Debtor's Plan was confirmed, the Mission acted timely.

Not surprisingly, because an order of confirmation is in its effect a judgment, "[e]quitable relief from a confirmed plan is appropriate only if the same circumstances would warrant relief from a judgment." *Boroff,* 189 B.R. at 56. Indeed, Rule 60(b) has been used to grant relief from confirmation orders. *See, e.g., In re BNW, Inc.,* 201 B.R. 838, 846 (Bankr.S.D.Ala.1996); *see generally In re Poteet Construction Co. Inc.,* 122 B.R. 616 (Bankr.S.D.Ga.1990). The moving party must establish that one of the enumerated grounds for relief under Rule 60(b) exists and that "the harm to the movant outweighs the necessity for finality in orders of confirmation." *In re BNW, Inc.,* 201 B.R. at 846 *(quoting Poteet,* 122 B.R. at 619). The Second Circuit has declared "that since 60(b) allows extraordinary judicial relief, it is invoked only if the moving party meets its burden of demonstrating " "exceptional circumstances." *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1142 (2d Cir.1994) *(quoting Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir.1986)); *In re 1115 Third Ave. Rest. Corp.,* 185 B.R. 12, 13 (S.D.N.Y.1995); *Boroff,* 189 B.R. at 56. As will be discussed, those circumstances exist here.

In *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court interpreted the excusable neglect standard applicable to the late filing of claims under Fed. R. Bankr.P. 9006 by looking to other federal rules where that term is used, including Rule 60(b)(1). *Id.* at 392–93, 113 S.Ct. 1489. Accordingly, it has been held that *"Pioneer's* more liberal definition of excusable neglect is applicable 'beyond the bankruptcy context where it arose.' " *Canfield v. Van Atta Buick/GMC Truck, Inc.,* 127 F.3d 248, 250 (2d Cir.1997) *(quoting Weinstock v. Cleary, Gottlieb, Steen & Hamilton,* 16 F.3d 501, 503 (2d Cir.1994)). As the Supreme Court has instructed the inferior courts, "with regard to determining whether a party's neglect of a deadline is excusable, ...that determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." 507 U.S. at 395, 113 S.Ct. 1489. Factors to consider include: the dan-

ger of prejudice to the debtor; the length of the delay and its potential impact on judicial proceedings; the reason for the delay, including whether it was within the reasonable control of the movant; and whether the movant acted in good faith. *Id.*

The Mission argues that lack of notice caused its failure to comply with the Notice of Assessment. It also complains that it never was made aware of the bankruptcy proceedings. SBE relies on the presumption that a letter, here, the Notice of Assessment, deposited into the mail with a correct address and adequate postage reaches its destination and is actually received by the addressee. *See Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932); *Meckel v. Continental Resources Co.,* 758 F.2d 811, 817 (2d Cir.1985); *In re O.W. Hubbell & Sons, Inc.,* 180 B.R. 31, 34 (N.D.N.Y.1995); *In re Randbre Corp.,* 66 B.R. 482, 485 (Bankr.S.D.N.Y.1986). The presumption of receipt does little, however, to change our equation. The Mission states that its first knowledge of the bankruptcy was when it received the Notice of Termination accompanied by a copy of the Notice of Assessment. The court's own records bolster this assertion, for the Mission was not served with the Notice of Commencement of Case nor the Bar Date Notice, not even at the apartments. Pursuant to Fed. R. Bankr. P.2002(a)(1) and (7), the Mission was entitled to notice of commencement of the case and of the last day to file proofs of claim. In addition, subdivision (i) of that rule permits a party in interest to file a request for notice of certain important matters in the case which otherwise would be sent only to the creditors' committee. Thus, the Mission was denied important notices to which it was absolutely entitled, as well as other notices which it could have requested under Rule 2002. But just as importantly, the Mission was denied the ability to designate a proper address for service, through either a request for notice under Rule 2002(g) or by filing a proof of claim listing its business address.[1] Surely the Debtor understood that it was not hous-

ing the Mission itself in a residential apartment building, with the result that the failure to give notice of the bankruptcy to the Mission deprived it of a very real benefit.

SBE never addresses this issue but points instead to the affidavits evidencing service of the disclosure statement and Plan on the Mission. The Mission's denial of receipt of these documents is insufficient alone to overcome the presumption of proper mailing to 401 East 89th Street. *See Ms. Interpret v. Rawe Druck–und Veredlungs–GmbH (In re Ms. Interpret),* 222 B.R. 409, 413 (Bankr. S.D.N.Y.1998); *O.W. Hubbell,* 180 B.R. at 34 (affidavits denying receipt of notice are not sufficient on their own to rebut the presumption of receipt); *In re Alexander's Inc.,* 176 B.R. 715, 721 (Bankr.S.D.N.Y.1995); *Meckel,* 758 F.2d at 817. However, service of the disclosure statement and Plan does not excuse the Debtor's failure to serve the Mission with what it was entitled to receive by virtue of Fed. R. Bankr.P. 2002 and my order directing service of the Bar Date Notice. The relevance of these omissions is that they deprived the Mission of the opportunity to designate its business address for service of various notices.

■ Turning to the critical notice, the Notice of Assessment, SBE has produced an affidavit of service to show that the notice was served on the Mission at the Building on June 6, 1997. However, an affidavit of service only creates a presumption of receipt if it is regular, that is, upon proof that, among other things, the item was deposited in the mail. To raise the presumption, it must evidence that the affiant personally mailed the notice. *See Capital Data Corp. v. Capital Nat'l Bank,* 778 F.Supp. 669, 675 (S.D.N.Y. 1991) *citing DeSimone v. Siena College,* 1991 WL 64857 at *2, 1991 U.S. Dist. Lexis 5529 at *6; *cf. Village of Kiryas Joel Local Development Corp. v. Ins. Co. of North America,* 996 F.2d 1390 (2d Cir.1993) (finding that a party's affidavit proved it mailed a notice of insurance cancellation, as the affidavit stated that the affiant personally mailed the notice,

---

1. Fed. R. Bankr.P.2002(g) directs that all notices required to be mailed under that rule to a creditor or equity security holder shall be addressed as such entity may direct in a filed request; otherwise, to the address shown in the list of creditors or the schedule, whichever is filed later. If, however, a proof of claim is filed listing a different address, that address is to be used.

and noting that the party's certificate of mailing was prepared in accordance with its customary office procedure). Alternatively, a party may present "proof that the mail was sent through regular office procedures followed in the regular course of business." *Capital Nat'l Bank,* 778 F.Supp. at 675.

This affidavit was dated August 19, 1997, not only two months after the date of alleged service but also more than a month after the assessment fees were supposed to have been paid in accordance with the confirmed Plan. And it was notarized the day after it was signed. In addition, it was executed by a lawyer with no personal knowledge of how the mailing would have been handled; her supplemental affidavit makes this apparent: "I have made an inquiry of the mailroom staff of the offices of Battle Fowler and I was given no indication that (a) the mailing for the Nigerian Mission [of the Notice of Assessment] to units 12C and 3A at 401 East 89th Street, New York, New York 10128 would not have been sent...." *Affidavit of Vasilia A. Tsismenakis dated October 16, 1997.* This affidavit shows that in October 1997, Ms. Tsismenakis asked the mailroom whether service would have been made on a particular date four months earlier, adding little to the proof in light of the fact that nothing was adduced respecting office procedure. *See Capital Nat'l Bank,* 778 F.Supp. at 675. There is therefore inadequate proof of proper mailing of the Notice of Assessment on the claimed date and no presumption of receipt arises. *See id.; see generally* B. Russell, BANKRUPTCY EVIDENCE MANUAL, § 301.8 at 298 (1998 ed.). In the face of the Mission's denial that it was served with the Notice of Assessment prior to the last date to pay that assessment, this affidavit is entitled to little weight.

SBE claims that the Mission is not entitled to specialized notice as a foreign entity. Assuming, without deciding, that this were true, ordinary notice does not mean no notice. Although SBE proffers a refused return receipt requested card, that card does not bear any date and SBE has not indicated to what it refers or even the identity of the sender. What is plain is that that card from the post office cannot relate to the Notice of Assessment because the Debtor, in its defective affidavit of service, claimed only to have caused the Mission to be served by first-class mail and not certified mail, return receipt requested.

Where all of this leaves us is that the Mission did not receive notice of the bankruptcy proceedings or of its right to file a proof of claim; the Mission was deprived of the opportunity to file a request for service at its business address; and the presumption that the Mission was properly served with the Notice of Assessment—which it denies having received—did not arise. In other words, the Mission cannot be said to have been responsible for its delay. But even if the Mission had been served with the Notice of Assessment at the Building, because the Mission had been deprived of the ability to require bankruptcy notices to be sent to its place of business and because the notice was not sent in the manner prescribed by the proprietary leases, which would have alerted the foreign occupants to the importance of the mail they had just received, I still would find that the delay was inadvertent and excusable.

Examining all relevant circumstances surrounding the Mission's failure to pay the assessment fee and applying the factors adopted in *Pioneer,* I conclude that the Mission has demonstrated excusable neglect for its failure to respond to the Notice of Assessment and pay the fee required by the Plan for retention of its equity. The Mission did not delay in bringing this motion; it moved less than three months after it received the Notice of Termination, when it discovered it had inadvertently defaulted under the Confirmation Order. Given the Debtor's failure to properly serve the Mission with the Notice of Commencement of Case, the Bar Date Notice and the Notice of Assessment, I cannot find that the Mission's failure to respond to the Notice of Assessment was willful. There is no evidence that the Mission recklessly or even negligently disregarded the notice, for SBE has not demonstrated that the Mission ever received it. Indeed, it appears that the methods of service employed by the Debtor deprived the Mission of the opportunity to ensure that it received proper

notice. Moreover, the Mission does not seek something for nothing; before bringing the motion, the Mission offered to pay the assessment fee, but SBE refused it. . Under these circumstances, it cannot be said that the Mission has not acted in good faith. No one has demonstrated prejudice to the Debtor if the Mission were to be granted relief from the effects of the Confirmation Order. Significantly, Debtor, although served with this motion, has not responded to it, a fairly reliable indication that the Debtor would not be harmed if the motion were to be granted. Certainly, any prejudice to SBE is minimal— the Debtor would have been obligated to accept timely payment of the assessment had the Mission tendered it, with the result that SBE would not have been obligated to purchase the defaulted stock. In addition, the Mission offered in October of last year to rectify its failure to pay the assessment. It was SBE's prerogative not to accept seemingly late tender. However, the mere passage of time does not create prejudice where there was none before; the Mission is still willing to pay the assessment fee. If SBE is ordered to relinquish the shares which the Plan required it to purchase, the Mission will pay the reorganized Debtor the assessment and thereby redeem its proprietary rights and the reorganized Debtor will return to SBE whatever monies it paid for the defaulted stock of the Mission. SBE will be changed but unharmed, restored to the position it would have occupied had the Mission timely paid the assessment.

On the other hand, were I to deny the Mission relief, it would forfeit its shares in the cooperative corporation and the two apartments, for which it paid $440,000, simply because it failed to pay an assessment of which it had no notice. There can be little doubt that the harm to the movant from denial of its motion outweighs the need for sanctity of the Confirmation Order. In any event, the relief sought by the Mission will not void the Confirmation Order nor otherwise threaten its finality but only nullify its effect on the Mission to the extent that that order canceled the Mission's shares in the Debtor. None of the creditors will be affected. In short, the Mission has demonstrated the exceptional circumstances required in

this Circuit for relief under Rule 60(b), *Paddington Partners*, 34 F.3d at 1143, and the excusable neglect which is the predicate for modification of the Confirmation Order.

Accordingly, the motion is granted. The Mission is relieved from so much of the Order of Confirmation as terminates its shares of stock in the reorganized Debtor and proprietary leases to apartments 3A and 12C. The Mission is to pay its assessment to the Debtor within 20 days of entry of an order granting this motion. The reorganized Debtor is thereupon to cancel the shares and proprietary leases issued to SBE on account of the Mission's alleged default, refund to SBE the price which it paid for the stock, and reissue shares and leases to the Mission.