**In re MOBILE FREEZERS,
INC., Debtor.**

**Civ. A. No. 92–0567–P–M.
Bankruptcy No. 90–00232.**

United States District Court,
S.D. Alabama, S.D.

Oct. 21, 1992.

William R. Sawyer, Asst. U.S. Atty., Mobile, Ala., for plaintiff.

Irvin Grodsky, Mobile, Ala., for defendant.

ORDER ON APPEAL REVERSING AND REMANDING THE ORDER OF BANKRUPTCY COURT GRANTING DEBTOR'S MOTION TO SELL ALL ITS ASSETS AND DENYING UNITED STATES' MOTION TO CONVERT

PITTMAN, Senior District Judge.

This case is before the court on the appeal of the United States of America

from the Bankruptcy Court's order granting the debtor's motion to sell all its assets and denying the United States of America's motion to convert the case from Chapter 11 to Chapter 7. The United States brings this appeal on behalf of the Defense Logistics Agency, an unsecured creditor.[1] This order is reviewable by the court under an abuse of discretion standard. For the reasons set forth below, this court finds that the order was an abuse of discretion.

For an investment of $6,000 in "new capital," the debtor's three equity security holders were to maintain their equity holdings and management positions under the Chapter 11 plan approved, over the dissent of the unsecured creditors, as "fair and equitable" by the Bankruptcy Court. There is nothing in the record of the $6,000 being paid. Under the plan, the debtor was to continue to operate as a going concern. Instead of continuing operations, debtor sold all of its assets to Christian Salvesen, which was also a secured creditor of the debtor. This sale was authorized by the Bankruptcy Court's order granting the debtor's motion to sell all its assets. The funds from this sale have been placed in escrow, and the Bankruptcy Court's order disbursing funds has been stayed by this court.

The debt owed to Christian Salvesen was unimpaired under the plan. The other secured creditor, the Small Business Administration (SBA), was impaired. The SBA's claim of $125,000, secured by a lien on property worth $35,000, would result in repayment of only 20 percent of the unsecured amount, for an impairment of $67,500. The other unsecured creditors also are to receive 20 percent of the face value of their claims under this plan.

Under the old absolute priority rule, which is still in effect for Chapter 7 liquidations, this plan could never have been approved. Under the absolute priority rule, a plan was fair and equitable—and thus able to be confirmed—only if it conformed to that rule. Victor Brudney & Marvin Chirelstein, *Corporate Finance: Cases and Materials* 188 (3d ed. 1987). The absolute priority rule, enunciated by Justice Douglas in *Consolidated Rock Products Co. v. Du Bois*, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982 (1941), provided that each successive class of senior creditors must be paid in full before any junior class was paid at all. While the payment need not have been in cash, the senior creditors must have given securities worth at least as much as the face value of their claims. *Id.* *See* Brudney & Chirelstein, *supra* at 197. This plan would have clearly failed under the old absolute priority rule because equity holders are paid while both secured and unsecured creditors are impaired. However, a conversion to Chapter 7, which still has the absolute priority rule, would not have diminished the rights of secured creditors, but would have substantially improved payments to the unsecured creditors.

■■■ Whatever the merits of the plan in this case, it at least had a logical justification. The theoretical basis of a chapter 11 bankruptcy is that the debtor is worth more to the current equity holders than to potential bidders in the market for the debtor's assets. *See* H.R. (Reform Act of 1978 Chapter 11), *reprinted in* Norton Bankr.L. & Prac. 728 (1990). As a result, a Chapter 11 plan envisions that the continued operation of the debtor will result in a stream of earnings, which is defined as inflows less outflows, whose present value is greater than the liquidation value of the firm.

The substantive protection of the old absolute priority rule has been replaced by procedural protection. Part of this scheme of protection is district court review of the Bankruptcy Court's order on the motion to convert.

Commentators have recognized that reorganizations tempt existing management to

---

**1.** The terms "secured creditor" and "unsecured creditor" are used, for the convenience of the reader, to refer to the holder of a secured claim and the holder of an unsecured claim, respectively. The Bankruptcy Code distinguishes between secured and unsecured claims, not between secured and unsecured creditors. H.R. (Reform Act of 1978 § 501), *reprinted in* Norton Bankr.L. & Prac. 307, 308 (1990).

abuse the Bankruptcy Code and transfer wealth from creditors to equity holders. Bradley & Rosenzweig, *The Untenable Case for Chapter 11*, 101 Yale L.J. 1043, 1045–46 (1992) (citing sources). Here, the equity holders prosper at the expense of the partially secured creditor, the Small Business Administration, and the unsecured creditors. A Chapter 7 liquidation would avoid this transfer of wealth, and thus this court must examine the facts of the case as well as the applicable law to see if the failure to convert to Chapter 7 constituted an abuse of discretion.

I. *The Bankruptcy Court Abused Its Discretion in Failing to Convert the Case*

■ After a review of the relevant standards for a conversion, it is apparent that the Bankruptcy Court abused its discretion in failing to grant the motion to convert this case from a Chapter 11 to a Chapter 7 bankruptcy. Bankruptcy Court orders stemming from such motions are reviewable under an abuse of discretion standard. *See In re Sullivan Central Plaza I, Ltd.*, 935 F.2d 723, 728 (5th Cir.1991). However, the Bankruptcy Court does not have unfettered discretion regarding conversion. Rather, the Bankruptcy Code provides specific factors for the court to consider in determining whether to convert the case. *See* 11 U.S.C. § 1112. The factors which are to considered in deciding the motion to convert favor conversion.

■ A Bankruptcy Court may convert a chapter 11 reorganization plan to a chapter 7 liquidation if, among other things, it finds that the debtor did not substantially consummate the plan or if the debtor materially defaulted with respect to the plan. *See* 11 U.S.C. § 1112(b)(7)–(8). This list of reasons to convert a case is not exhaustive. H.R.Rep. (Reform Act of 1978), *reprinted in* Norton Bankr.L. & Prac. 815 (1990). *See In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir.1984) (affirming Bankruptcy Court's dismissal of debtor's Chapter 11 petition "for cause," because equitable nature of determination allows court to consider good faith of debtor, despite good

faith's absence from list of factors to be considered in determining "cause"). The reasons given in the statute favor a conversion of this case from a reorganization to a liquidation.

A. The plan was not substantially consummated

■ The Bankruptcy Court's conclusions of law regarding the substantial consummation and material breach of the confirmed plan are reviewable *de novo* on appeal. *In re Morris*, 950 F.2d 1531, 1533 (11th Cir.1992) (affirming, on *de novo* review, Bankruptcy Court's retention of subject matter jurisdiction over adversary proceeding, despite termination of Chapter 11 case, where retention was consistent with majority view under case law). After a review of the record, it is clear that this plan was not substantially consummated and was materially breached, contrary to the Bankruptcy Court's conclusions.

■ In the instant case, the three part test for substantial consummation has not been satisfied.

"substantial consummation" means—

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor ... of all or substantially all of the property dealt with by the plan;
*and*
(C) commencement of distribution under the plan.

11 U.S.C. § 1101(2) (emphasis added). The Bankruptcy Court equated the debtor's ability to effect consummation with consummation itself (Bankruptcy Court's order at 6). This contradicts the clear language of the statute, which looks to the degree of completion of the plan in order to determine whether conversion is proper.

■ The appellant from the Bankruptcy Court's grant of the motion to disburse funds and the motion for sale of substantially all assets has moved for a stay of the Bankruptcy Court's order, thus this case is distinguishable from the Eleventh Circuit and district court cases dismissing appeals

from Bankruptcy Court orders as moot where no stay was sought and a sale of assets took place. *E.g. Miami Center Limited Partnership v. Bank of New York*, 838 F.2d 1547 (11th Cir.), *cert. denied* 488 U.S. 823, 109 S.Ct. 69, 102 L.Ed.2d 46 (1988). In *Miami Center*, the Eleventh Circuit noted that:

> [i]t is settled law in this circuit that when a *debtor* fails to obtain a stay pending appeal of the bankruptcy court's or the district court's order setting aside an automatic stay and allowing a creditor to foreclose on property, the subsequent foreclosure and sale of the property rendered moot any appeal.

*Id.* at 1553 (emphasis added). As in the foreclosure sale of property, the sale of debtor's assets approved by the Bankruptcy Court's order transfers an asset or assets from the debtor to a third party. Here the Bankruptcy Court approved the sale of all the debtor's assets, on the debtor's motion, but placed the proceeds from the sale in escrow. The creditor appealing from the Bankruptcy Court's order moved for a stay from this court, and the stay was granted. As a result, the concern that cases such as *Miami Center* display for considerations of finality, protection of the integrity of the foreclosure sale process, and the court's inability to rescind the sale and grant relief, *id.* at 1553, are inapplicable to the instant case. Because the funds from the sale were placed in escrow, the concern that a substantially consummated plan would be set aside does not arise. If the case is converted to a Chapter 7 liquidation, only the distribution of the funds held in escrow would be effected.

The first and third part of the test for substantial consummation have not been met by the debtor in the instant case. The debtor has made no distributions under the plan. This demonstrates no desire by the debtor to meet the obligations from the operation of the plan. The payment set out in the plan was accomplished, not by operation of the plan or desire to pay its creditors from the operation of the company, but was accomplished only by the sale of the assets and the debtor reaping a windfall. All the debtor's assets were sold, including their licenses to do business. Because the funds from the sale of assets were placed in escrow, and because this court granted a stay of the Bankruptcy Court's order, the transfer of property and distribution of assets under the plan have not taken place.

Furthermore, this debtor cannot substantially consummate the plan. Since all of the assets of the debtor have been sold, the second part of the test, which calls for assumption by the debtor of property dealt with by the plan, clearly has not been met and cannot be met.

■ The motion to convert should have been granted because the confirmed plan can never be consummated. The inability of the debtor to consummate a plan under Chapter 11 should lead to a dismissal of the case, or a conversion of the case to a Chapter 7 liquidation. *See* 5 Collier on Bankruptcy para. 1112.03(d)(vii) (1992) (where "there is no longer any likelihood of consummating a plan, if the court so determines, it is duty bound to end the case"). *See also Lehman v. Commissioner*, 129 F.2d 288, 290 (2d Cir.1942) (petitioner cannot take tax write-off for stock of corporations involved in bankruptcy reorganization proceedings where such proceedings had not been dismissed by the bankruptcy court, because it is the duty of such a court to dismiss a proceeding where there is no longer any likelihood of a reorganization plan being consummated, thus petitioner is engaging in mere conjecture that she will be entirely uncompensated). The plan in this case called for the debtor to continue operations and retain title to all assets. Neither of those aspects of the plan can be fulfilled by the debtor, thus the plan is not—and cannot be—substantially consummated.

**B. There was a material default by the debtor**

■ This court disagrees with the Bankruptcy Court's conclusion of law regarding the debtor's material default under the plan. The Bankruptcy Court held that, while there had "technically" been a de-

fault under the plan by the debtor, this default was excused because the debtor proposed to make the payments specified by the plan (Bankruptcy Court's order at 6–7).

However, the asset sale clearly contradicts the terms of the plan and is therefore a material breach. The disclosure statement used for confirmation of the plan states that the plan provides that the debtor will continue to operate, and will retain title to all assets. By selling all its assets, the debtor clearly was not continuing its operations and retaining title to all assets. As a result, the debtor materially breached the plan.

In addition, the equity holders have not made their payments to the debtor as called for by the plan. Since these equity holders stand to gain over $180,000 from the sale of the debtor's assets, the failure to pay the entire $6,000 due is especially puzzling. The debtor's president never made the $2,000 payment which he was supposed to make under the plan, and it seems that the other two equity holders also failed to pay the $4,000 due from them. Ordinarily, equity holders are not allowed to receive anything under a reorganization plan if dissenting creditors are impaired. *See* 11 U.S.C. § 1129(b)(2)(B). However, the Bankruptcy Court could confirm this plan only because the equity holders were willing to make the $6,000 payment to the debtor. Thus, the failure to make this payment is a material default.

If the debtor seeks to reap the benefit of a $187,064 windfall while paying its unsecured creditors only 20% of their claims, the proposal to sell the assets paid the unsecured creditors only 20% of their claims while giving the debtor an enormous windfall clearly violates the Bankruptcy Code and is grossly inequitable to those unsecured creditors.

II. *The Bankruptcy Court Order Allowed the Debtor to Achieve by Motion What it Could not by Amending the Plan*

■ At the time the debtor made a motion to sell all of its assets, the United States, representing an unsecured creditor, objected to the motion and made a motion to convert to Chapter 7. By granting the debtor's motion to sell all its assets, and by denying the United States' motion to convert, the Bankruptcy Court allowed the debtor to achieve by motion what it could not do by amending the plan. Because the motion to disburse, coupled with the motion for the sale of the debtor's assets, allows the debtor to achieve a result outside the confines of Chapter 11, which is designed to permit a business to continue operating, this would be an additional factor favoring the grant of the motion to convert.

When the motion to sell all of the debtor's assets was granted by the Bankruptcy Court, the debtor achieved the same result as a Chapter 7 case. Under Chapter 7, the debtor is liquidated, and does not continue operations or retain title to its assets. This result is what the motion to sell all of the debtor's assets accomplishes, despite the fact that motion was filed by a debtor in a Chapter 11 case.

The difference between filing a motion to sell all assets in this Chapter 11 case and a Chapter 7 liquidation is that, in the Chapter 11 situation, the proceeds of the liquidation go to the debtor, while, in a Chapter 7 case, the creditors would be able to claim the proceeds first. Thus the plan in this case, together with the order granting the debtor the ability to sell all its assets, allows a liquidation while circumventing the order of priority for the payment of claims established by Chapter 7. It would be unconscionable to commit this windfall to the debtor's benefit at the expense of the creditors. This is an abuse of bankruptcy purposes.

If this had been a Chapter 7 case, the equity holders of the debtor would have gotten nothing from the liquidation. The priority of claims in a Chapter 7 liquidation is governed by 11 U.S.C. § 726. The order of priority for payment, under that Section, is as follows: first, administrative expenses and taxes, then post-petition claims, then unsecured claims for wages and employee benefit plans, then tax claims, then the claims of unsecured creditors, and lastly to

the debtor. *Id.* *See* 11 U.S.C. § 507. In this case, the debtor, i.e. its equity security holders, would have gotten nothing under a Chapter 7 liquidation.

The plan and the orders do not adversely effect holders of secured claims. The treatment of claims of creditors holding a security interest is governed by 11 U.S.C. § 506. Section 506 provides that a claim is secured to the extent of the creditor's interest in the debtor's property. 11 U.S.C. § 506(a). Secured claims are entitled to "adequate protection." 11 U.S.C. §§ 361–64. Here, all secured claims retain their security interests, thus they are adequately protected.

 Even the confirmation of the plan took place on a faulty basis. It is true that the appeal from the confirmation was dismissed, by agreement. However, the valuation of the debtor for the purpose of confirming the plan and the value received, post-confirmation, for the debtor's assets differ greatly. The disclosure documents used to obtain confirmation reflect a liquidation value of $441,409 for the debtor's assets. When the debtor actually sold its assets, post-confirmation, it received $775,000. This is a discrepancy of $333,591, a sizeable figure. Indeed, if the $775,000 figure was used as the liquidation value of the debtor in confirmation proceedings, the unsecured creditors would have received $383,000 in liquidation. This is too large a discrepancy, or difference, to ignore. Under a more realistic evaluation, the plan could not have been confirmed, over the creditor's dissents, as fair and equitable by the Bankruptcy Court. This makes the difference in valuation extremely significant in this case.

Where the difference in value is of this magnitude, and where the debtor certainly has more information on the value of the assets than the creditors, and where a windfall of this magnitude works to the benefit of the debtor and against the creditors, and results in such a large windfall to the debtor, the United State's motion to convert to Chapter 7 should have been granted. It is fundamentally wrong to fund a new venture for the debtor with the sale of assets partly accumulated at the expense of its creditors.

The debtor could not have achieved by amending the plan what it achieved by motion. In this case, there were creditors who dissented from the plan which was proposed. Every class of creditor must either: one, approve a plan; two, receive more under the plan than they would have received in a liquidation; or three, be "crammed down" by having the court find that a plan is fair and equitable, in order for a plan to be confirmed. 11 U.S.C. § 1129(a)(7)(A). Here, the dissenters do not receive more under the plan, as effected by the motion to sell all assets, than they would have received under a Chapter 7 liquidation. Furthermore, the plan, as effected by the motion, cannot be fair and equitable under the Code.

This plan could not have been approved as fair and equitable by the Bankruptcy Court if the debtor had attempted to amend the plan to sell all its assets. The Code provides that dissenting creditors must either, one, be paid more under a Chapter 11 plan than in a Chapter 7 liquidation or, two, that no creditor junior to that class will receive or retain any property under the plan in order for the plan to be approved as fair and equitable. 11 U.S.C. § 1129(b)(2)(C). This plan, as effected by the motion to sell all assets, cannot meet the fair and equitable test. As discussed above, the dissenting unsecured creditors would have received more had the debtor been liquidated. In addition, a class junior to the unsecured creditor, the equity security holders, receives property under the plan. Therefore, it is clear that the purpose of the debtor in making its motion to sell all assets was to achieve by motion what it could not by amendment.

 This court notes that a recent Supreme Court case suggests that the conversion provision of Chapter 11 may be an important vehicle for ensuring compliance with confirmed Chapter 11 plans. In *Toibb v. Radloff,* ― U.S. ―, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991), the Court held that an individual debtor not engaged in a business was eligible for relief under Chapter

11. Justice Blackmun, writing for a majority of the Court, noted that the conversion provisions are an important tool. The court was persuaded that concerns regarding involuntary consumer debtors who would be forced into Chapter 11 by their creditors were overstated.

> We find these concerns overstated in light of the Code's provisions for dealing with recalcitrant Chapter 11 debtors. If an involuntary Chapter 11 debtor fails to cooperate, this likely will provide the requisite 'cause' for the bankruptcy court to convert the Chapter 11 case to one under Chapter 7.

*Toibb*, —— U.S. at ——, 111 S.Ct. at 2201–02, 115 L.Ed.2d at 154. A Chapter 11 debtor who attempts to circumvent the priority provisions of Chapter 7 by selling all of its assets after a Chapter 11 plan is confirmed is no less of a recalcitrant debtor than a consumer debtor who refuses to cooperate in a plan of reorganization. Thus it is appropriate to apply the conversion provisions to such a debtor.

The debtor's argument that the $187,064 windfall to the equity holders is a function of their retention of the control premium, and thus a natural result of the confirmation of the reorganization plan, is erroneous. The equity holders in the instant case received their windfall as the result of the ability to discharge debts in bankruptcy and then sell off all the debtor's assets, thus profiting at the expense of the creditors, and not because they retained the control premium.

It is true that equity holders who retain their holdings after a bankruptcy stand to prosper. Because the burden of debt on the debtor is diminished by the discharge of some or all of that debt in bankruptcy, the outflows from the debtor are decreased. This means that the stream of future earnings of the debtor is increased, because the stream of earnings is the difference between the inflows to the debtor and the outflows from the debtor. In turn, this increases the present value of that stream of future earnings. Because the equity holders are the residual takers of this stream of earnings, the value of their equity holdings would increase, however, the value of their holdings would also increase if the equity holders, who have the ability to select management, and here are themselves the management, increased the value of the debtor by making wise business decisions. *See Sullivan Central Plaza I*, 935 F.2d at 728 (sale of debtor's principal asset supports finding that debtor could not successfully reorganize); *Miami Center*, 838 F.2d at 1555 (court will consider whether post-confirmation relief could adversely affect re-emergence of debtor as a viable entity); Jost, *Chapter 11 Under Fire*, 78–Jul A.B.A.J. 32 (instead of rescuing firms, Chapter 11 merely prolongs their agony); Warren, *Bankruptcy is a Better Alternative*, Nat'l L.J., April 20, 1992 at 15 (8 out of 10 companies never emerge from Chapter 11 despite the breathing space it provides for management). *See also* Bradley & Rosenzweig, *supra* at 1075 (Bankruptcy Code has not materially increased survival rate of bankrupt firms, while helping incumbent management retain control).

Here, however, the equity holders of the debtor prospered because they were able to do by motion what they could not do by amending the plan of reorganization, and not because they managed the post-bankruptcy debtor well. In fact, the debtor had not managed the post-confirmation operation of the business well. No payments had been made from the operation of the business under the plan. Thus the debtor's argument is unpersuasive.

Because of the potential for equity holders to prosper at the expense of creditors if they are allowed to retain their holdings, the procedural protection discussed above places limits on what a Chapter 11 plan may contain. This plan, as effected by the post-confirmation motions, went beyond the allowable boundaries of such a plan. In addition, by selling all its assets, the debtor thwarted the essential purpose of the Chapter 11 plan, which was to allow the debtor to continue its operations. As a result, and because of other factors favoring conversion, the Bankruptcy Court should have granted the motion to convert. Failure to grant the motion constituted an abuse of discretion, thus this court REVERSES the

Bankruptcy Court's order. The Bankruptcy Court is hereby ORDERED to convert the case to Chapter 7 and pay the funds held in escrow as provided by Chapter 7 and consistent with this order.