In re BNW, INC., Debtor.

Kathryn T. CARTER, Plaintiff,

v.

The PEOPLES BANK AND TRUST COMPANY, Defendant,

Lonnie L. Mixon, Trustee, Intervenor.

Bankruptcy No. 93–10173–MAM–11. Adv. No. 95–1256.

United States Bankruptcy Court, S.D. Alabama.

Aug. 26, 1996.

Robert D. Reynolds, Montgomery, AL, for Plaintiff.

John C. Calame, Selma, AL, for Defendant.

Lonnie L. Mixon, Trustee/Intervenor.

### ORDER DISMISSING COMPLAINT AND DENYING RELIEF FROM STAY TO KATHRYN T. CARTER

MARGARET A. MAHONEY, Chief Judge.

This matter is before the Court on the Complaint of the Plaintiff, Kathryn T. Carter, and Intervenor, Lonnie L. Mixon, Trustee, seeking relief from the actions of the Defendant, The Peoples Bank and Trust Company. As to the issues raised in the adversary case and the relief from stay motion as they relate to BNW, Inc., the Court has no subject matter jurisdiction to take any of the requested actions as the property at issue is not property of BNW's estate under 28 U.S.C. § 1334(e). As to the issues between PBT and Carter, they do not arise under title 11, or in a case under title 11, nor are they related to a case under title 11. 28 U.S.C. § 1334(b). For the reasons indicated below, the Court orders the complaint dismissed for lack of jurisdiction and the Court denies the motion of Carter for relief from stay since there is no automatic stay in effect. If the Court is incorrect as to the lack of jurisdiction over the foreclosure issues, the Court alternatively holds that abstention is appropriate pursuant to 28 U.S.C. § 1334(c)(1).

### FACTS [1]

Kathryn T. Carter ("Carter") and The Peoples Bank and Trust Company ("PBT") are two creditors of BNW, Inc. ("BNW"), a Chapter 11 debtor that confirmed a plan in this Court on July 18, 1994. Postconfirmation, PBT foreclosed on the real estate of BNW after BNW failed to pay it according to BNW's Chapter 11 plan ("Plan"). Carter disputes PBT's right to foreclose and sell the property. The crux of the dispute is who gets money or property when a plan fails postconfirmation. In this case, if PBT's lien rights as established in the Chapter 11 plan are primary and valid, Carter will receive little or nothing from BNW. If PBT's lien rights are not primary and valid, Carter, and possibly other creditors, stand to gain some of the foreclosure sale proceeds obtained by PBT.

BNW filed a Chapter 11 bankruptcy case on February 3, 1993. BNW operated a retail feed and seed business under the trade name Dallas Feed and Seed in Selma, Alabama, both before and after the filing of its bankruptcy case. BNW filed a disclosure statement and a plan of reorganization. The Plan was confirmed without objection on July 18, 1994, and BNW was discharged from its prepetition debts except as provided in its Plan.

Preconfirmation, BNW owed PBT approximately $228,000. Only $64,000 of that amount was secured by a first lien on BNW's property at 1224 Water Avenue, Selma, Alabama. The remainder was secured by a lien on BNW's equipment, inventory and receivables; a $46,900 certificate of deposit of Tommy Norris, father of Michael Norris (a 50% shareholder of the Debtor); and a second mortgage on Michael Norris' homestead. Carter held a second mortgage on the real estate of the Debtor at 1224 Water Avenue, Selma, Alabama, which at the filing of the Chapter 11 case had a balance of approximately $31,000.

Postconfirmation, according to the Plan, PBT held a first mortgage on the real estate, equipment, inventory, and accounts receivable of BNW, and a second mortgage on Michael Norris' home. The mortgages secured PBT's entire debt, not just $64,000 of it. Pursuant to the Plan, Tommy Norris'

---

1. The parties filed a joint stipulation of facts. They are incorporated by reference. The Court has only restated here those facts, and several other facts found in the Court file, which were relevant to its decision.

certificate of deposit was applied to the debt. That application left a PBT lien of approximately $181,400 on BNW's assets.

Postconfirmation, according to the Plan, Carter had a claim against BNW. Carter asserts she had a lien securing her claim as well. However, whether any lien for Carter existed was not unambiguously established by the language of the Plan. Carter found the language unclear. She naturally sought to retain a lien until the conclusion of all payments under the Plan. She filed an objection to the Plan which stated:

> Carter objects to the Debtor's proposal to sever, release and cancel her lien on the building. The Debtor's Plan calls for a cancellation of the lien with the consummation of the Plan. Carter suggests that a more equitable treatment would be that the note is canceled and that the lien survives and is only canceled with completion of all payments due under the Plan.

After filing the above-mentioned objection to the plan of reorganization and disclosure statement of BNW, Carter withdrew it by letter dated June 27, 1994, and cast her ballot in favor of the Plan. The Plan, both before and after Carter's objection, provided the same thing. It stated "the liens of mortgages (such as Carter's) shall be severed, released and/or canceled upon consummation of the Plan." (Parentheses added.) On the final page of the disclosure statement, the Debtor had indicated that it would:

> take approximately two years for the Debtor to consummate the proposed Plan. Consummation of the Plan shall serve to sever the security interests of all creditors not otherwise provided for under the Plan, specifically those interests set forth as Class III (Carter's class) undersecured indebtednesses. (Parentheses added.)

The Plan, in seeming contradiction to the disclosure statement language, also stated that Carter's claim was fully unsecured. This language left unclear when the lien of Carter was to be released. Was the unsecured status to occur when the confirmation was final or when full payment under the Plan was achieved?

To make matters worse, the Plan also did not clearly delineate who the "Debtor" was in various parts of the Plan. Was it the Chapter 11 bankruptcy BNW whose property is "property of the estate" of the bankruptcy pursuant to 11 U.S.C. § 541, or was it the new postconfirmation BNW or both? The Plan stated, "All property of the estate not dealt with in the Plan shall be deemed property of the Debtor upon the effective date of the Plan." The confirmation order vested all of the Debtor's property in the Debtor except as otherwise provided in the Plan.

The Court, in the Plan, was to retain jurisdiction over the Plan and the parties as follows:

> The U.S. Bankruptcy Court for the Southern District of Alabama shall retain jurisdiction over the parties to and the subject matter of the Plan and all matters related thereto until the Plan has been fully consummated and the case closed or until the case is dismissed or converted to another Chapter. Specifically, the Court shall retain jurisdiction to interpret and enforce the provisions of the Plan, determine all disputes or controversies arising under the Plan, enter orders in aid of consummation of the Plan and determine the allowance of claims or expenses against the Debtor or the estate ... and to determine all matters of any nature or type necessary or appropriate to carry out the Plan.

The order confirming the Plan stated the jurisdictional retention differently:

> The Court retains jurisdiction for any and all matters that may come before the Court in the administration of the Plan of Reorganization and pursuant to the Order of Confirmation, specifically including but not limited to, jurisdiction to determine all objections ... to fix and award compensation ... to hear and determine all questions concerning the assets or property of the Debtor ... and determine all matters of any nature or type necessary or appropriate to carry out the Plan.

What power could or did the bankruptcy court retain?

After confirmation, BNW did some of the things required under the Plan. What fueled this conflict, besides PBT's foreclosure of its first lien on BNW's real estate, was BNW's

failure to pay any creditors any money from BNW's business operations. However, PBT did receive the $46,900 certificate of deposit. BNW also signed a new promissory note to PBT on December 7, 1994, in the amount of $198,182.64, secured by the accounts receivable, equipment, inventory, real estate of BNW, and real estate of Michael Norris.

The confirmation order required BNW to file post-confirmation reports until further order of the Court with the initial report due 60 days from the date of the order of confirmation and on a quarterly basis after that. BNW failed to file any post-confirmation reports.

On April 14, 1995, approximately eight months after confirmation, PBT filed a motion for relief from the automatic stay in the BNW case.[2] It alleged that BNW was delinquent in its payments under the security agreement and note it held on BNW's property pursuant to PBT's treatment under the Plan. The motion was granted by default on May 3, 1995. On May 10, 1995, the Bankruptcy Administrator filed a motion to convert the case to one under Chapter 7 of the Bankruptcy Code. On June 27, 1995, PBT foreclosed upon the real property of BNW and sold to the highest bidder for $195,000. On July 20, 1995, the BNW case was converted to a Chapter 7 case. A Chapter 7 Trustee, Lonnie L. Mixon ("Mixon"), was appointed; he is the intervenor in this suit.

On January 30, 1996, Carter filed a motion for relief from the automatic stay seeking authority to redeem the property upon which PBT had foreclosed. Carter also filed this adversary proceeding seeking (1) to set aside the foreclosure sale; or (2) to require PBT to return to the estate any funds in excess of $65,000 that it received in the foreclosure sale; or (3) to equitably subordinate the lien claim of PBT to the extent necessary to pay Carter and all other creditors from the foreclosure proceeds. The Trustee, Lonnie Mixon, intervened on the Plaintiff's side in this case and has relied on the Plaintiff's arguments. PBT answered, in general, that it acted in reliance on the final confirmation

order in the case and that Carter is estopped from raising these issues since she did not object to BNW's plan.

## LAW

This case raises several issues about Chapter 11 plans, confirmation orders, and post-confirmation rights and liabilities of debtors and creditors. To determine whether any relief could be afforded Carter, the status of her claim and lien must be examined vis-à-vis the plan and confirmation order. The court will discuss:

A. Can the Plan of BNW be modified after the confirmation order is final?

B. If the Plan is not modifiable, what are Carter's rights under the Plan as confirmed?

C. How does BNW's Plan affect PBT's foreclosure?

D. What assets were property of the estate of BNW upon conversion?

### A. Can the Plan of BNW be Modified After the Confirmation Order is Final?

The order confirming BNW's plan entered on July 18, 1994, is a final order and is entitled to res judicata effect. 11 U.S.C. § 1141(a). *In re North Alabama Anesthesiology Group, P.C.,* 154 B.R. 752 (N.D.Ala. 1993). There are four possible avenues for setting aside a final confirmation order that parties have attempted to use in other reported cases: (1) revocation of the order under 11 U.S.C. § 1144; (2) modification of the plan under 11 U.S.C. § 1127(b); (3) relief from the order under Fed.R.Bankr.P. 9024; or (4) relief under § 105 of the Bankruptcy Code. None of these alternatives are available in this case.

■ Revocation of an order of confirmation under 11 U.S.C. § 1144 is only appropriate within six months after confirmation and only if the order was procured by fraud. *First Union Nat'l Bank of Florida v. Perdido Motel Group, Inc.,* 142 B.R. 460 (N.D.Ala.

---

**2.** The case had not been closed due to the need for postconfirmation reports which had not yet

been filed.

1992). The complaint in this case was not filed until December 18, 1995. There were no allegations of fraud.

■ Modification of a plan under 11 U.S.C. § 1127(b) is only appropriate if the plan is not substantially consummated and the proponent of the plan or the reorganized debtor seeks it. BNW's plan has been substantially consummated.[3]

■ Substantial consummation is an issue in this case only to the extent it allows (or prevents) modification of BNW's plan. Section 1127(b) is the only place in the Code the term is used.[4]

■ Section 1101(2) defines "substantial consummation" of a Chapter 11 plan. There are three requirements:

A. transfer of all or substantially all of the property proposed by the plan to be transferred;

B. assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

C. commencement of distribution under the plan.

These requirements were fulfilled in this case. There is evidence in the stipulated facts as to requirements A and B. BNW executed a new note to reflect its consolidated debt and security interests with PBT and the language of the confirmation order itself vests property in reorganized BNW. Since the burden of proof would be on the plaintiff to show a right to modify the Plan or set aside the confirmation order, and the only evidence indicates requirements A and B were fulfilled, that burden was not met as to requirements A and B. *In re H & L Developers, Inc.*, 178 B.R. 77 (Bankr.E.D.Pa.1994); *In re Fansal Shoe Corp.*, 119 B.R. 28, 30 (Bankr.S.D.N.Y.1990).

The parties focused on requirement C— commencement of distribution under the plan. Under the BNW Plan, Tommy Norris' certificate of deposit was paid over to PBT after confirmation. No other payments were made to creditors from BNW or anyone else. The Court finds the payment of the certificate was sufficient.

The payment represents the two things required under § 1101(2): (1) a commencement of a payment (2) under the plan. "Commencement" of distributions means only that distribution has begun. PBT received $46,900 from the Tommy Norris cer-

---

**3.** Even if the plan had not been substantially consummated, there would be an issue as to whether there is a "proponent of the plan" or "reorganized debtor" available to modify this plan. The Trustee of the Chapter 7 case of BNW may be a proponent of the plan for purposes of § 1127(b) if there are any assets to administer.

The Chapter 7 Trustee has the duty of administering whatever assets of a Chapter 11 debtor never vested in the reorganized entity under the plan and therefore were subject to the conversion order. See section D on pages 848–50. As to those assets, the Trustee has wide authority. *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 351–352, 105 S.Ct. 1986, 1992, 85 L.Ed.2d 372 (1985) ("it is clear that the trustee plays the role most analogous to that of a solvent corporation's management").

Trustees are the representatives of the estates they handle. They make judgments about the assets and manage the estates. *Gallucci v. Grant (In re Gallucci)*, 931 F.2d 738 (11th Cir.1991); *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7 (1st Cir.1993). In some Chapter 7 cases, these duties may include operating a debtor's business. 11 U.S.C. § 704(8); *Matter of Quarter Moon Livestock Co., Inc.*, 116 B.R. 775 (Bankr.D.Idaho

1990). A Chapter 7 trustee controls a corporate Chapter 7 debtor's attorney-client privilege. *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. at 351–352, 105 S.Ct. at 1992–1993. The trustee is charged with distributing assets of estates. 11 U.S.C. § 704. Given all of these powers and duties over assets, trustees in converted Chapter 11s must also succeed to a debtor's status as plan proponent for purposes of plan modification under 11 U.S.C. § 1127(b). If the trustee controls the assets, he or she should have authority to deal with their distribution.

However, in this case, the schedules filed by BNW upon conversion show the existence of no assets. When a trustee has no assets to administer and therefore no need to modify a confirmed plan, he or she probably cannot serve as a proponent of the plan, *even if* it was not substantially consummated. Only a party with authority over actual assets should hold that power.

**4.** Substantial consummation has nothing to do with the finality of the confirmation order itself. Once the appeal period has expired, the order is final. All of the effects of 11 U.S.C. § 1141 occur at that time, i.e. vesting of property in the reorganized entity and discharge.

tificate of deposit. The amount is irrelevant. The payment was "under the plan." The certificate of deposit cashout is a distribution established and required by the plan. It does not matter that it did not come directly from BNW. Tommy Norris, PBT and BNW changed their legal positions due to the distribution. If they knew that the confirmation order could be modified to alter lien rights after the loan pay down, they might have bargained differently.

The purpose of allowing modification of a plan only before confirmation or before substantial consummation of the plan is not stated in § 1127 or its legislative history. However, case law and common sense dictate that the reason is the legal principle of res judicata and the likely prejudice to debtors and creditors alike if orders, particularly confirmation orders, are not final. *H & L Developers,* 178 B.R. at 81 ("[T]he purpose of the · substantial consummation requirement is to provide some finality to bankruptcy proceedings …"). If plans could always be modified, there would be no certainty of treatment afforded creditors. Why consent to any plan if, once accepted and confirmed, the plan could be modified to again impair one's rights? Consent to a plan which impaired one's rights would simply establish a new baseline for each modification. *In re Stevenson,* 138 B.R. 964 (Bankr.D.Idaho 1992), *aff'd as modified,* 148 B.R. 592 (D.Idaho 1992). For that reason, creditors and debtors alike need to know that a confirmation order is final.

■ Generally, substantial consummation will occur on the date that the confirmation order becomes final. The acts necessary under § 1101(2) can be accomplished in a matter of minutes with transfer of money to one or more creditors; postconfirmation operation of the business by the reorganized entity (or whoever is to operate it); and an order of confirmation vesting all property in the reorganized debtor, or execution of a document transferring the property to another entity.

Carter relies heavily on another case from this district for her argument that consummation has not occurred. The case of *In re Mobile Freezers, Inc.,* 146 B.R. 1000 (S.D.Ala.1992) *aff'd, Mobile Freezers, Inc. v.*

*U.S.,* 14 F.3d 57 (11th Cir.) *cert. denied,* —— U.S. ——, 115 S.Ct. 55, 130 L.Ed.2d 14 (1994), held that substantial consummation had not occurred in a confirmed Chapter 11 case based on a finding that *no* payments had been made before the time of conversion. *Mobile Freezers* at 146 B.R. at 1004. This case is different from the *Mobile Freezers* case. Here a distribution was made.

Requirement (2) of § 1101 has been met. Payment of the $46,900 standing alone would be insufficient. But the payment, together with the transfer of property to reorganized BNW, and assumption of the business and its management by reorganized BNW, is enough. Therefore, the Plan cannot be modified. The rights and liabilities of the Debtor and creditors are governed by the Plan confirmed on July 18, 1994, and cannot be modified.

■ The Plan is also not modifiable under Fed.R.Bankr.P. 9024. Rule 9024 incorporates Fed.R.Civ.P. 60 into the Bankruptcy Rules. It allows relief from an order only under certain circumstances. It has been used to grant relief from confirmation orders. *U.S. v. Poteet Const. Co., Inc. (In re Poteet Const. Co., Inc.),* 122 B.R. 616 (Bankr. S.D.Ga.1990). Rule 60(a) allowing relief from clerical mistakes does not apply in this case. Rule 60(b) allows relief for mistake, inadvertence, surprise or excusable neglect if the motion is made within one year after the order at issue was entered. This adversary case was filed more than one year after the confirmation order. Therefore, Rule 60(b)(4), (5) or (6) would be the only possible relief grounds. The only seemingly applicable section would be Rule 60(b)(6) which allows relief for "any other reason justifying relief from the operation of the judgment."

■ Rule 60(b)(6) relief is to be granted only in exceptional or extraordinary circumstances. *Olle v. Henry & Wright Corp.,* 910 F.2d 357 (6th Cir.1990); *Doe v. Zimmerman (In re Zimmerman),* 869 F.2d 1126 (8th Cir.1989). Rule 60(b)(6) only allows relief for reasons other than those listed in Rule 60(b)(1)–(5) or § 1144 or § 1127(b). *In re Benhil Shirt Shops, Inc.,* 87 B.R. 275 (S.D.N.Y.1988). In this case, Carter seeks ·

relief in essence because she was never paid anything under the Plan and because PBT foreclosed upon its lien and received all proceeds of the foreclosure sale. Such possibilities were foreseeable. The Plan language was clear about the primacy of PBT's lien after confirmation. A lack of value to collateralize that lien was foreseeable. The Court does not see evidence of extraordinary or exceptional circumstances.

 Finally, some courts have used their powers under 11 U.S.C. § 105 to set aside confirmation orders. *In re Rideout*, 86 B.R. 523 (Bankr.N.D.Ohio 1988). This Court believes, in general, court power under § 105 should be narrowly construed. As to confirmation orders, the Court believes no grounds justify its use. The Bankruptcy Code clearly establishes two circumstances in which confirmation orders are able to be set aside or modified. 11 U.S.C. §§ 1127(b) and 1141. When the Bankruptcy Code establishes a right explicitly, a bankruptcy court cannot expand or contract that right implicitly through use of equitable powers. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 968, 99 L.Ed.2d 169 (1988); *Matter of Sadkin*, 36 F.3d 473 (5th Cir.1994); *First Union Nat'l Bank v. Perdido Motel Group, Inc.*, 142 B.R. 460, 463 (N.D.Ala.1992) ("Furthermore, 11 U.S.C. § 105 does not . . . authorize the court to act in contravention of the provisions of [the Bankruptcy Code]") (parenthesis added); *In re Stevenson*, 138 B.R. 964 (Bankr.D.Idaho 1992). Section 105 does not give a bankruptcy judge a right to do equity without limits. If that were true, § 105 would supplant and render unnecessary the rest of the Bankruptcy Code.

Therefore, the confirmation order of July 18, 1994 stands. This Court is not empowered to simply "do justice." No facts establish a right to revoke or set aside the order under 11 U.S.C. § 1127(b) or 1144 or Fed. R.Bankr.P. 9024.

## B. If the Plan is Not Modifiable, What are Carter's Rights Under the Plan as Confirmed?

The BNW Plan provided that until "consummation," Carter had a claim against BNW. The secondary position of the Carter claim to the PBT claim as against the real estate after confirmation was clear. The Bankruptcy Code allows plans to modify any liens. 11 U.S.C. § 1123(a)(5)(E). Carter also consented to the subordination. However, whether Carter's claim was a secured one secondary to PBT's lien, or her claim was unsecured, was unclear. The Plan stated that the Carter claim was fully unsecured. The Plan also stated that the lien of Carter would be released at "consummation." The disclosure statement indicated it would "take approximately two years for the Debtor to consummate the proposed Plan." From the language, one could argue either that the lien was released upon substantial consummation, or that the lien was released only upon complete payment of Carter's claim as provided by the Plan.

Before confirmation, Carter herself found the Plan language unclear. She thought the language could be interpreted as stripping her lien from the real estate upon confirmation as evidenced by her objection to the Plan. "Carter suggests that a more equitable treatment would be that the note is canceled and that *the lien survives and is only canceled with completion of all payments due under the Plan.*" (Underlining added.) (See Carter objection to BNW plan filed March 2, 1994, p. 1.)

The Court finds that it is very possible the plan intended to cancel Carter's lien at substantial consummation of the Plan. However, the Court need not reach this issue to decide this case. If Carter's lien survived until full payment of her claim, her lien was still subordinated by the Plan to PBT's lien. If her lien was released at confirmation, her claim was also subordinated to PBT's claim.[5] *In re W.F. Monroe Cigar, Co.*, 166 B.R. 110 (N.D.Ill.1994).

5. As shown by the facts, once PBT obtained a first lien on the real estate of approximately $198,182.64, whether Carter's lien is considered as a second mortgage or unsecured after substantial consummation of the plan probably makes little difference. With a sale price of $195,000, there would be little, if anything, left for a second lienholder.

848

### C. *How Does BNW's Plan Affect PBT's Foreclosure?*

On May 3, 1995, the Court granted relief from the stay to PBT to foreclose its interest in BNW's property. After confirmation, such a motion is usually not necessary. Under 11 U.S.C. § 362(c)(2), once a debtor is discharged and the property is no longer property of the estate, there is no stay. BNW, at confirmation, had been granted a discharge of its debts except as provided in its plan. 11 U.S.C. § 1141(d)(1). Under 11 U.S.C. § 362(c)(1), once property is no longer "property of the estate," it is no longer subject to the stay. The real property of BNW was no longer "property of the estate" as it had vested in the reorganized BNW at confirmation.[6] *In re Paradise Valley Country Club,* 31 B.R. 613 (D.C.Colo.1983); *Draggoo Elec. Co., Inc. v. State of Indiana Employment Security Division, (In re Draggoo Elec. Co., Inc.),* 57 B.R. 916 (Bankr.N.D.Ind.1986).

Although no relief from stay request was necessary, the Court nevertheless signed the "comfort" order. Such orders are sometimes utilized to prevent title questions when a bankruptcy case has not been closed after confirmation and parties are unsure about the applicability of the stay. The fact that Carter was not served with notice of the hearing is not fatal. There was no order necessary and the order gave away no right to which Carter or BNW was entitled. PBT could have commenced foreclosure proceedings with no prior court approval at all.

The foreclosure itself is governed by Alabama law and PBT needed to conduct the foreclosure in the manner appropriate under state law. Carter had to be treated as a second lienholder on the property. Whether PBT followed Alabama law as to the foreclosure as it relates to Carter is an issue properly decided by a state court. This is not a matter within this Court's jurisdiction under 28 U.S.C. § 1334(b) or (e) as explained in the discussion at paragraph D below.

If there is any possible jurisdiction as to the foreclosure itself, the case is at most "related to" a case under Title 11 under 28 U.S.C. § 1334(b). *In the Matter of Lemco*

*Gypsum, Inc.,* 910 F.2d 784 (11th Cir.1990); *Pacor Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). This Court holds, in that event, that permissive abstention is appropriate as to any issues between PBT and Carter about the foreclosure. This Court reports and recommends to the District Court that it abstain from hearing the matter. 28 U.S.C. § 1334(c)(1); *In re Republic Reader's Service, Inc.,* 81 B.R. 422 (Bankr.S.D.Tex.1987).

### D. *What Assets Were Property of the Estate of BNW Upon Conversion?*

There is no prohibition against a case involving a confirmed Chapter 11 plan being converted to Chapter 7. In fact, 11 U.S.C. § 1112(b)(8) specifically allows conversion for "material default by the debtor with respect to a confirmed plan." Conversely, there is no prohibition on a new Chapter 11 or Chapter 7 filing by a reorganized debtor after a final confirmation order. *Integon Life Ins. Corp. v. Mableton–Booper Associates (Matter of Mableton–Booper Associates),* 127 B.R. 941 (Bankr.N.D.Ga.1991); *Fruehauf Corp. v. Jartran, Inc. (In re Jartran, Inc.),* 886 F.2d 859 (7th Cir.1989); *Security Pacific Credit Corp. v. Savannah, Ltd. (Matter of Savannah, Ltd.),* 162 B.R. 912 (Bankr.S.D.Ga.1993).

What is the distinction and which one should be used? This Court believes that what is appropriate depends upon the language of the confirmed plan, but in most instances, after substantial consummation, conversion of a confirmed Chapter 11 case accomplishes little or nothing.

28 U.S.C. § 1334(e) gives district courts, and through them, bankruptcy courts, "exclusive jurisdiction of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." As discussed above, upon confirmation, all property of the estate vests in the Debtor (the reorganized one) "except as otherwise provided in the plan or the order

---

6. See discussion at paragraph D below.

confirming the plan." 11 U.S.C. § 1141(b).[7] This vesting means the property is no longer "property of the estate" which is subject to bankruptcy jurisdiction. *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 462 (6th Cir.1991) (at least as to payments made before conversion); *In re Winom Tool and Die, Inc.*, 173 B.R. 613 (Bankr.E.D.Mich.1994); *contra, In re Kaleidoscope of High Point, Inc.*, 56 B.R. 562 (Bankr.M.D.N.C.1986); *Pittsburg Refrigeration v. Federman (Matter of Davison)*, 79 B.R. 866 (Bankr.W.D.Mo.1987) (implying postconfirmation estate consists of all property held by reorganized entity at that time).

■ Once a typical confirmation occurs, the property of the Chapter 11 debtor, unless otherwise specified, is owned by the reorganized entity which operates pursuant to its corporate charter and the contract established with its creditors in its plan of reorganization. *In re Burnsbrooke Apartments of Athens, Ltd.*, 151 B.R. 455 (Bankr.S.D.Ohio 1992); *.U.S. v. Redmond*, 36 B.R. 932 (D.Kan. 1984); *In re Morgan & Morgan, Inc.*, 24 B.R. 518 (Bankr.S.D.N.Y.1982) ("The order of confirmation marked the commencement of the period when a debtor was weaned from dependence on the bankruptcy court's injunctive powers so as to stand on its own feet with respect to postconfirmation matters"). The property (and new entity) no longer enjoy the benefits or detriments of the Bankruptcy Code.

■ Section 1141(b) of the Bankruptcy Code does allow a debtor or a court to prevent or postpone the transfer of property of the estate to the new postconfirmation entity by providing that assets do not vest in the reorganized entity or they vest after a delay or with qualifications. When that occurs, assets remain "property of the estate" subject to the jurisdiction of the bankruptcy

court and the dictates of the Bankruptcy Code.[8] *U.S. v. Unger*, 949 F.2d 231 (8th Cir.1991); *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581 (9th Cir. 1993). Otherwise, property vested in the reorganized entity is outside the bankruptcy court's jurisdiction. *In re H.R.P. Auto Center, Inc.*, 130 B.R. 247 (Bankr.N.D.Ohio 1991).

BNW's Plan and confirmation order uses the term "Debtor" to refer to both the pre- and postconfirmation BNW. The confirmation order says all property vests in the Debtor at confirmation except as otherwise provided in the Plan. The Plan states, "All property of the estate not dealt with in this Plan shall be deemed property of the Debtor upon the effective date of the Plan" and states, "The Debtor shall retain all of its property ... during the Plan." As in the Bankruptcy Code, the entity referred to must be determined from the context. The Court finds that the language intended to vest all property of the Debtor in reorganized BNW. Reading the Plan as a whole, the term Debtor, when used to refer to property retention, must mean the postconfirmation BNW. The parts of the Plan referring to Debtor and property vesting are at the end of the Plan with the other sections which refer to postconfirmation actions, all using the term Debtor as well. (See BNW Plan of Reorganization dated January 28, 1994, p. 5, paragraphs entitled "Management" and "Handling of Claims.") This construction is also consistent with § 1141 and its treatment of the term "Debtor" upon confirmation.

■ The language in the Plan and confirmation order about retention of jurisdiction by the bankruptcy court does not change this result. A bankruptcy court, regardless of what the plan or confirmation order may say about jurisdiction, can only

---

7. The term "Debtor" is used in the Bankruptcy Code to describe the prepetition entity, the entity from filing to confirmation, and the postconfirmation entity. Which entity is being referred to must be determined from the context. For instance, § 523(a)(2)(B)(iv), § 523(a)(6), and § 541(b)(3) refer to the prepetition debtor. Sections 1112(a), 1121(a) and 541(a) refer to the pre-confirmation debtor. Sections 1141(b),

1142(a) and 1145(a) refer to the postconfirmation debtor.

8. For example, a plan might provide for the postconfirmation sale of certain assets of a debtor with proceeds to be distributed to creditors. Creditors might request that these assets remain in the bankruptcy estate until sale and distribution.

hear matters within its jurisdictional limits. *In re Cary Metal Products, Inc.*, 152 B.R. 927 (Bankr.N.D.Ill.1993), *aff'd,* 158 B.R. 459 (N.D.Ill.1993), *aff'd, Zerand–Bernal Group, Inc. v. Cox,* 23 F.3d 159 (7th Cir.1994). Although the BNW plan states the court retains jurisdiction over "the parties to and the subject matter of the Plan" until the Plan is fully consummated or the case is closed, dismissed or converted, that provision cannot create jurisdiction not statutorily given to the district and bankruptcy courts. "A court cannot write its own jurisdictional ticket." *Zerand–Bernal Group v. Cox,* 23 F.3d at 164. The provision, if read as broadly as Carter wishes, could give this Court or the district court jurisdiction over disputes between third parties about foreclosures, asset sales, postconfirmation claims and other matters not impacting the estate of a debtor. It is plaintiff's burden to show that jurisdiction exists. Given the Plan language and finality of the confirmation order, Carter did not meet her burden. The order confirming the BNW plan further limited the retention of jurisdiction as well. It stated:

> The Court retains jurisdiction for any and all matters that may come before the Court in the administration of the Plan of Reorganization and pursuant to the Order of Confirmation, specifically including but not limited to, jurisdiction to determine all objections . . . to fix and award compensation . . . to hear and determine all questions concerning the assets or property of the Debtor . . . and determine all matters of any nature or type necessary or appropriate to carry out the Plan.

This paragraph limits jurisdiction to things necessary to close the case. This is the appropriate limit. *Walnut Associates v. Saidel,* 164 B.R. 487, 492 (E.D.Pa.1994). The Court is to deal with objections to preconfirmation claims, compensation of professionals and other matters necessary to implement the Plan. Once property is transferred to reorganized BNW, it is no longer property of the estate and an order cannot seek to extend jurisdiction to reorganized BNW's property.

PBT admitted that this Court had jurisdiction to determine the issues raised in Car-

ter's complaint. This Court holds that there are no issues to be determined since the confirmation order is final and the Plan binds the parties. PBT's consent to jurisdiction does not alter this Court's jurisdiction in any way. Parties can never waive by consent the requirement of subject matter jurisdiction. *Hertz Corp. v. Alamo Rent–A–Car, Inc.,* 16 F.3d 1126, 1131 (11th Cir.1994). Only the jurisdiction that is granted to district courts, and through them, to bankruptcy courts under 28 U.S.C. § 1334 exists.

■■■■ Section 348 of the Bankruptcy Code which deals with the effect of conversion is silent as to the effect of a postconfirmation conversion. However, it is clear Section 348 cannot confer jurisdiction either. The jurisdictional scheme rests in title 28. Therefore, conversion can only affect the assets still clearly under the jurisdiction of the court under 28 U.S.C. § 1334. *In re H.R.P. Auto Center, Inc.,* 130 B.R. 247, 248 (Bankr. N.D.Ohio 1991); *In re T.S.P. Industr., Inc.,* 117 B.R. 375 (Bankr.N.D.Ill.1990), *motion to amend denied,* 120 B.R. 107 (Bankr.N.D.Ill. 1990). Conversion is also not a means of vacating a final confirmation order without grounds timely and sufficient under § 1144 or Fed.R.Bankr.P. 9024 for its set aside. *General Electric Credit Corp. v. Nardulli & Sons Co., Inc. (In re Nardulli & Sons Co., Inc.),* 66 B.R. 871 (Bankr.W.D.Pa.1986); *Thomas v. The Economic Dev. Admin. of the U.S. Dept. of Commerce (In re Pierce Packing Co.),* 169 B.R. 421 (Bankr.D.Mont.1994).

### E. Carter's Motion for Relief From Stay

Carter filed a motion seeking relief from the stay "to proceed with state court action for statutory right of redemption and/or action to recover surplus from foreclosure sale." The real property is not property of the estate so no stay is in place. Therefore, the motion is denied. Carter is free to proceed as she deems appropriate to enforce her rights as established by the Plan.

### CONCLUSION

The confirmation of BNW's plan established the rights of Carter and PBT against BNW's assets from the date the confirmation order was final. That final confirmation or-

 

der is not properly attacked by this adversary proceeding and remains final. Reorganized BNW was vested with all of the assets of BNW's bankruptcy estate by the confirmation order and Plan. Once vested, the assets are no longer subject to court jurisdiction under 28 U.S.C. § 1334, except as necessary to conclude pending matters. Therefore, no subordination of liens, set aside of foreclosure or turnover of funds from the foreclosure to the bankruptcy trustee is appropriate. Relief from stay is not required.

THEREFORE, IT IS ORDERED that the complaint of Kathryn T. Carter, Plaintiff, and Lonnie L. Mixon, Intervenor, is DISMISSED; or alternatively, the Court reports and recommends to the district court that it abstain from hearing the issues between Kathryn T. Carter and The Peoples Bank and Trust Company; and

IT IS FURTHER ORDERED that the motion of Kathryn T. Carter for relief from stay is DENIED.